1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq., SBN 136857
Deborah P. Gutierrez, Esq., SBN 240383
Hazel S. Chu, Esq., SBN 271840
6100 Center Drive, Suite 1050
Los Angeles, California 90045
Telephone:   (310) 893-6200
Facsimile:   (310) 988-2930
Email:        deborah@prosperlaw.com

Attorneys for Plaintiff,
Gregory Johnson

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

GREGORY JOHNSON, an individual,

    Plaintiff,

    vs.

HSBC BANK USA, NATIONAL
ASSOCIATION AS TRUSTEE FOR
THE ELLINGTON TRUST SERIES
2007-1; BANK OF AMERICA, N.A.;
and Does 1 – 10, inclusive,

    Defendants.

Case No.   **'11 CV 2091 JM   WVG**

**VERIFIED COMPLAINT FOR:**

1. **DECLARATORY RELIEF**
   **[28 U.S.C. §§ 2201, 2202]**
2. **NEGLIGENCE**
3. **QUASI CONTRACT**
4. **VIOLATION OF 12 U.S.C.**
   **§ 2605**
5. **VIOLATION OF 15 U.S.C.**
   **§ 1692, ET SEQ.**
6. **VIOLATION OF CALIFORNIA**
   **BUSINESS AND**
   **PROFESSIONS CODE**
   **SECTION 17200, ET SEQ.**
7. **ACCOUNTING**

**DEMAND FOR JURY TRIAL**

1

TABLE OF CONTENTS

2

I.    STATEMENT OF THE CASE....................................................................3

3

II.   JURISDICTION, VENUE, AND PARTIES............................................4

4

III.  INTRODUCTION............................................................................6

5

IV.   THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE

6

TO PLAINTIFF'S HOME......................................................................12

7

V.    THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT

8

CONVEYED NO INTEREST TO HSBC BANK..........................................14

9

VI.   THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENT

10

THAT CONVEYED NO AUTHORITY TO QUALITY TO ACT AS THE

11

TRUSTEE....................................................................................17

12

VII.  PLAINTIFF'S LOAN MODIFICATION AND DEBT VALIDATION EFFORTS..................19

13

VIII. PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT,

14

MONETARY, LEGAL, AND EQUITABLE DAMAGES....................................21

15

IX.   FIRST CAUSE OF ACTION - DECLARATORY RELIEF: TO DETERMINE STATUS OF

16

DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]......................................24

17

X.    SECOND CAUSE OF ACTION - NEGLIGENCE..........................................25

18

XI.   THIRD CAUSE OF ACTION - QUASI CONTRACT.......................................27

19

XII.  FOURTH CAUSE OF ACTION - VIOLATION OF 12 U.S.C. § 2605 (RESPA)..............28

20

XIII. FIFTH CAUSE OF ACTION - VIOLATION OF 15 U.S.C. § 1692, ET SEQ................29

21

XIV.  SIXTH CAUSE OF ACTION - BUS. AND PROF. CODE SECTION 17200, ET SEQ............30

22

XV.   SEVENTH CAUSE OF ACTION - ACCOUNTING...........................................32

23

24

25

26

27

28

VERIFIED COMPLAINT

**COMPLAINT**

COMES NOW Plaintiff Gregory Johnson ("Plaintiff" or "Mr. Johnson"), by and through his counsel, for his Complaint against Defendants, HSBC Bank USA, National Association as Trustee for the Ellington Trust Series 2007-1 (in its capacity as purported assignee of Plaintiff's Deed of Trust) (hereinafter "**HSBC Bank**"); and Bank of America, N.A. (in its capacity as purported substituted mortgage servicer of Plaintiff's Note and Deed of Trust) (hereinafter "**Bank of America**"), (collectively "Defendants"), plead as follows:

## I.   STATEMENT OF THE CASE

1.      Plaintiff alleges that Defendants are third-party strangers to his mortgage loan and have no ownership interest entitling them to collect payment or declare a default.  By hiding behind the complexities of the mortgage finance system, Defendants brazenly attempt to dupe Plaintiff (and millions of other American homeowners) into believing that they have the right to collect on a debt in which HSBC Bank has no ownership interest.  In an attempt to further their fraudulent scheme and create the air of propriety surrounding their debt collection efforts, Defendants have resorted to "papering the file" by fabricating an "Assignment of Deed of Trust," employing individuals who have no authority or personal knowledge of the facts to which they attest, and falsely representing to Plaintiff and *to the Court* that they have the right to take Plaintiff's property away.  Not only is Defendants' conduct a *criminal violation* of California's Mortgage Fraud Statute, Cal. Penal Code section 532(f)(a)(4)[1],  and an affront to long-standing property laws, but their reliance on fabricated and forged documents undermines the integrity of the judicial system.  Through this action, Plaintiff seeks to stop Defendants' fraudulent practices, discover the true holder in due course of his Promissory Note ("Note"), and determine the status of Defendants' claims.

---

[1] Cal. Penal Code section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following…(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

## II.   JURISDICTION, VENUE, AND PARTIES

2.     This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692, 42 U.S.C. § 1983 which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[2]

3.     This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

4.     This Court has original jurisdiction over the claims in this action based on 28 U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

5.     The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Southern District of California and involved real property located in the Southern District of California.  Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

6.     Plaintiff is now, and at all times mentioned herein, individuals residing in the County of San Diego.  At all times relevant to this action, Plaintiff has owned real property commonly known as 1522 Avenida Andante, Oceanside, California 92056 (the "Property"),  further described as Assessor's Parcel Number 696-0-114-295, with the following legal description:

LOT 46 OF RANCHO DEL ORO VILLAGE 1 TRACT NO. 1.6, IN THE CITY OF OCEANSIDE, COUNTY

---

[2] The Ninth Circuit instructs that in actions brought under 28 U.S.C. § 2201, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).  The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation.  *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11–03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011).  As held by the court in *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum shopping, and is not duplicative litigation.

OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO THEREOF NO. 11794, FILED IN THE OFFICE OF THE COUNTY RECORDER ON APRIL 22, 1987.

7.     At all relevant times, HSBC Bank USA, National Association as Trustee for the Ellington Trust Series 2007-1, is a National Association organized under the laws of the United States with its principal place of business in New York.

8.     At all relevant times, Bank of America, N.A., is a National Association organized under the laws of the United States with its principal place of business in North Carolina.

9.     Plaintiff is ignorant of the true identity and capacity of Defendants designated as Does 1-10, but will amend the Complaint when their identities have been ascertained according to proof at the time of trial.  However, Plaintiff alleges on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants, and were, and are responsible for the injuries, damages, and harm, incurred by Plaintiff.  Plaintiff further alleges on information and belief that each such designated Defendant acted, and acts, as the authorized agent, representative, and associate of the other Defendants in doing the things alleged herein.

10.     Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

11.     Any allegation about acts of any corporate or other business Defendant means that the corporation or other business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

12.     At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint.  Additionally, some or all of the Defendants acted as the agent of the other

1  Defendants, and all of the Defendants acted within the scope of their agency if acting as
2  an agent of the other.

3     13. At all relevant times, each Defendant knew or realized that the other
4  Defendants were engaging in or planned to engage in the violations of law alleged in
5  this Complaint.  Knowing or realizing that the other Defendants were engaging in or
6  planning to engage in unlawful conduct, each Defendant nevertheless facilitated the
7  commission of those unlawful acts.  Each Defendant intended to and did encourage,
8  facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted
9  the other Defendants in the unlawful conduct.

10 **III. INTRODUCTION**

11    14. During the Mortgage Boom Era of 2002 to 2007, Wall Street investors
12 looked to feed their insatiable and reckless greed for profit by tapping directly into the
13 American Dream – home ownership.  Mortgage lenders and investment banks
14 aggressively lured the American people into predatory loans with teaser interest rates
15 and into purchasing homes with inflated appraisals and under the promise that the
16 booming real estate market would continue to boom.  Wall Street took the soon to be
17 toxic loans and bundled them into "Mortgage Backed Securities" through a process
18 known as "Securitization."  These "securities" were then sold to investors in the form of
19 certificates, whereby the investors became the "Certificateholders" of the securities that
20 were to be fed by the toxic loans.

21    15. Knowing that the predatory loans would soon default and turn into toxic
22 assets, Wall Street placed their bets accordingly and bought exotic insurance products in
23 the form of Credit Default Swaps.[3]  Thus, when the Mortgage Boom turned into a

_____

24
25   [3] In 1995, JPMorgan created the Credit Default Swap (CDS).  Essentially, a CDS is a form of
insurance intended to protect the buyer of the policy in case the borrower defaults on the loan.  If the
borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted
26 loan.  The main difference between a traditional insurance policy and a CDS is that anyone can
purchase a CDS, even those who have no direct "insurable interest" in the lender.  CDSs were
27 instrumental during the housing bubble because once the banks ran out of creditworthy borrowers, they
had to turn to uncreditworthy "subprime" borrowers. To avoid losses from default, the banks moved
28 these risky mortgages off their books by bundling them into "securities" and selling them to investors.
To induce investors to buy, these securities, the securities were then "insured" with credit default

Mortgage Meltdown (which it did), they would stand to make even more profit when the mortgage insurance paid them out for their "losses."

16.    However, in their rush to "securitize" the predatory loans, Wall Street failed to actually follow its own rules and regulations, creating the instant situation where the securities are not actually backed by any mortgages at all.  Under the standard model, the promissory notes were *supposed* to be sold and transferred into a trust pool ("Securitized Trust") that holds the promissory notes as collateral on the securities bought by investors ("Certificateholders").  These "true sales" allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against default.  The purpose of securitizing collateral debt obligations was to provide a large supply of money to lenders for originating loans, and to provide investment to bond holders – which were expected to be relatively safe.

17.    The Securitized Trusts, if ever formed properly, are subject to and governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the 424B5 Prospectus; (4) the common law trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code section 860A through 860G, better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

18.    An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering.  This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in case of default.  In addition to other required documentation to complete the Collateral File of any given

---

swaps.  CDSs allowed investors to bet against the average American to default on their mortgage with little risk.  CDS insurance was especially attractive to investors who had knowledge of the subprime mortgage industry, since they knew the likelihood of default on those loans was much higher.  Notably, AIG Insurance Company ("AIG"), an insurance carrier who owned a considerable market share of these CDS policies, was unable to make good on these policies after the housing bubble burst resulting in AIG seeking a government bailout.  *See* Justin Fox, *Why the Government Wouldn't Let AIG Fail?*, TIME Business (September 16, 2008) http://www.time.com/time/business/article/0,8599,1841699,00.html.  Thus, in the end, it was the American taxpayer who bore the burden of these CDS.

1   loan, two documents relating to each mortgage loan must be validly transferred to the

2   Trust as part of the securitization process – the promissory note and the security

3   instrument (deed of trust or mortgage).  In this case, on information and belief, neither

4   document was validly transferred.

5        19.    Here, Plaintiff alleges that the "true sales" never took place due to the

6   failure to follow the basic legal requirements for the transfer of a negotiable instrument

7   and thereby, HSBC Bank did not acquire any legal, equitable, and pecuniary interest in

8   Mr. Johnson's Note and Mortgage.  As a result, thereof, HSBC Bank, which purports to

9   be Mr. Johnson's creditor, actually has no secured or unsecured right, title, or interest in

10  Mr. Johnson's Note and Mortgage, and has no right to collect mortgage payments,

11  demand mortgage payments, or report derogatorily against Mr. Johnson's credit.[4]

12       20.    Plaintiff further alleges that, on information and belief, the Ellington Trust

13  Series 2007-1 (hereinafter "**Ellington Trust**") that purportedly owns Plaintiff's Note

14  and Mortgage has been dissolved due to the disbursement and receipt of mortgage

15  insurance payouts to HSBC Bank and the Certificateholders (including, but not limited

16  to, Credit Default Swaps and other mortgage insurance products).  As a result of these

17  mortgage insurance payouts, HSBC Bank has been paid in full on Plaintiff's debt

18  obligation.

19       21.    Nonetheless, HSBC Bank attempts to take advantage of the complex

20  structured finance system to defraud yet another homeowner.  Plaintiff anticipates that

21  HSBC Bank will seek a Court-sanctioned bailout by submitting a blatantly fabricated

22  "Assignment" via a Request for Judicial Notice, thereby committing fraud on the Court,

---

[4] Plaintiff's allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.S. Bank vs. Ibanez*, SJC-10694, 2011 WL 38071.  In *Ibanez*, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages.  The court rejected the banks' argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

VERIFIED COMPLAINT                                                    -8-

and attempting to further mislead Plaintiff into believing that HSBC Bank is his actual creditor, and is entitled to enforce his obligation.

22.     Plaintiff does not dispute that he owes money on his mortgage obligation.[5] Rather, Plaintiff disputes the amount owed, and seeks the Court's assistance in determining who the holder in due course is of his Note and Deed of Trust, and specifically what rights, if any, HSBC Bank has to claim a secured or unsecured interest in Plaintiff's Note or Mortgage.

23.     Plaintiff's information and belief is based on (1) a title report and analysis of the Property's county records; (2) direct written and oral communication with Defendants; (3) his counsel's research, experience, and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, and publicly available securitization documents and practices; (4) a review of the purported "Assignment of Deed of Trust" signed by Treva Moreland; and (5) an audit of HSBC Bank's filings with the Securities and Exchange Commission ("SEC"), including HSBC Bank's 424B5 Prospectus and the Pooling and Servicing Agreement ("PSA").

24.     On or about December 19, 2006, Mr. Johnson executed a Note and Mortgage in favor of Fremont Investment & Loan (hereinafter "Fremont Investment"), obtaining a loan on the Property.  MERS was named on the Deed of Trust as the purported "nominee" and "beneficiary" of the Deed of Trust.

25.     Plaintiff alleges and believes thereon that on or around the time of origination of Mr. Johnson's loan, Fremont Investment attempted to securitize and sell his loan to another entity or entities.  **That entity was *not* HSBC Bank or the Ellington Trust.**

---

[5] However, simply because Plaintiff does not dispute this fact, the Court should not condone HSBC Bank's and Bank of America's fraudulent and predatory mortgage servicing practices and allow it to collect on money it was not owed.  Simply put, the Court should not allow HSBC Bank or Bank of America to trample over 200 years of well-settled property laws just because Plaintiff "owes somebody the money."

26.     Plaintiff alleges on information and belief that Fremont Investment never sold, transferred, or granted his Note or Mortgage to the Sponsor, Depositor, or HSBC Bank, and that HSBC Bank is merely a third-party stranger to the loan transaction. Furthermore, Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiff's Note was ever properly endorsed, and transferred to HSBC Bank.  In fact, Plaintiff has requested that Bank of America verify and validate his debt.  Although this information should be readily available to any mortgage servicer, Bank of America has failed to provide any evidence to verify the owner and amount of Plaintiff's Mortgage or validate the claim to Plaintiff's debt obligation.

27.     The parties involved in the alleged Securitization and transfer of Plaintiff's Note and Mortgage failed to adhere to section 2.01 of the PSA, which requires that Plaintiff's Note and Mortgage be properly endorsed, transferred, accepted, and deposited with the Securitized Trust (or its custodian) on or before the "closing date" indicated on the Prospectus.  The "closing date" is the date by which all of the Notes and Mortgages must be transferred into the Ellington Trust.  The failure to do so results in the Note and Mortgage not being part of the Ellington Trust res, such that it is not a loan that either HSBC Bank or Bank of America can attempt to collect on.

28.     On or about May 29, 2008, Treva Moreland, purportedly the "Assistant Secretary" for MERS, allegedly executed a document purporting to be an "Assignment of Deed of Trust" ("Assignment"), in which she intentionally misrepresented to Plaintiff in writing that HSBC Bank had acquired an interest in his Note and Mortgage, and that MERS had endorsed, transferred, and negotiated his Note to HSBC Bank.  In fact, no such transfer of interest took place, a fact that Ms. Moreland, HSBC Bank and Bank of America were aware of.  *See* **Exhibit "A"**, attached hereto is a true and correct copy of the Assignment, executed on May 29, 2008.  Plaintiff specifically disputes the contents and authenticity of this document.

29. Plaintiff alleges the only recorded "Assignment" was executed after the closing date of the trust. The dubious "Assignment" raises numerous red flags and further demonstrates that Plaintiff's Note and Mortgage were not deposited into the Trust by the closing date, and that the "Assignment" was fabricated in attempt to "paper over" the fatal securitization defects.

30. The failure to deposit Plaintiff's Note into the Ellington Trust before the closing date is a violation of the PSA and of New York trust law. Consequently, the Ellington Trust cannot claim any legal or equitable right, title, or interest in Mr. Johnson's Note and Mortgage since HSBC Bank cannot take any action which is not authorized by the Securitization agreements that created and govern the Ellington Trust.

31. Plaintiff does not allege or assert that he is a beneficiary or party to the PSA. Rather, Plaintiff alleges that the failure to securitize his Note makes it impossible for HSBC Bank, Ellington Trust, and/or Bank of America to claim, allege or assert that it was assigned, transferred or granted Plaintiff's Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiff also alleges that the failure to securitize his Note and Mortgage has resulted in an unperfected lien that Defendants cannot enforce in any manner whatsoever.[6]

32. Mr. Johnson relied on HSBC Bank and/or Bank of America's misrepresentations and has been damaged in the following ways: (1) multiple parties may seek to enforce his debt obligation against him; (2) the title to his home has been clouded and rendered unmarketable, as any would-be buyer of Plaintiff's home will find

---

[6] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC Home Loans Servicing, and Recontrust, in which Attorney General Catherine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitzation Trusts. *State of Nevada vs. Bank of America et al.*, No. 3:11-cv-00135-RCJ, (C.D. Nev August 30, 2011). The AG concludes that, "[t]hese are not mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note." *Id.* at ¶ 146.

VERIFIED COMPLAINT                                                                    -11-

themselves in legal limbo, unable to know with any certainty whether they can safely buy Plaintiff's home or get title insurance; (3) he has been paying the wrong party for an undetermined amount of time and overpaid in interest that was over calculated; (4) he is unable to determine whether he sent his monthly mortgage payments to the right party; and (5) he has expended significant funds to cover the cost of attorneys' fees and related costs.

33.   In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any obligation of Plaintiff in favor of HSBC Bank or Bank of America, such that either of them can collect Plaintiff's mortgage payments, demand payment or engage in debt collection activities.

## IV.   THE ROLE OF MERS IN SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE TO PLAINTIFF'S HOME

34.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a private corporation that administers the MERS System, a national electronic registry that purports to track the transfer of ownership interests and servicing rights in mortgage loans, including Mr. Johnson's loan.  In 1993, the MERS system was created by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages.  Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.  Members contractually agree to appoint MERS as their common agent on all mortgages they register in the MERS system.  In essence, MERS privatized the mortgage recording system, creating a situation wherein a borrower can no longer go to the Office of the County Recorder and determine who their lender actually is at any given point in time.

35.   MERS is listed as grantee in the official records maintained at county register of deeds offices.  The lenders were supposed to retain the interest in the promissory notes, as well as the servicing rights to the mortgages, not MERS.

36.     Plaintiff alleges that MERS did not affect an assignment, transfer, negotiation, or sale of his Note and Mortgage to any Defendant or Doe Defendant.

37.     The operative document defining MERS and its rights and functions is the Deed of Trust ("Deed of Trust" or "Trust Deed").  The Trust Deed conveys a security interest and power of sale in the real estate to the Lender, not MERS.[7]

38.     Because MERS is merely an electronic registration system and not a true pecuniary beneficiary, and did not grant, assign, or transfer any true or pecuniary beneficial interest in Plaintiff's Note and Mortgage.  Contrary to the recitations contained in the "Assignment" purportedly executed on May 29, 2008: (1) MERS did not receive any value or consideration for Plaintiff's Note and Mortgage, (2) MERS did not "grant, assign, or transfer" any interest in Plaintiff's Note and Mortgage; and (3) Treva Moreland, the purported signatory of the purported "Assignment", was not the "Assistant Secretary" for MERS and lacked the requisite corporate and legal authority to effect an actual "assignment" of Plaintiff's Note and Mortgage (assuming that MERS had any legal, equitable, or pecuniary interest in Plaintiff's Note and Mortgage, which Plaintiff claims it did not).

39.     MERS's own membership rules directly prohibit MERS from ever claiming ownership of any mortgages or negotiable instruments, including Mr. Johnson's.  *See* **Exhibit "B"** attached hereto is a true and correct copy of MERS's Terms and Conditions.  A successor-in-interest to the beneficial interest in the Trust Deed may choose to engage MERS as its agent by execution of a subsequent agreement, but MERS and its members cannot force MERS upon all future purchasers simply by claiming such authority in the original deed of trust.  In fact, in a September 2009 deposition, former President of MERS, R.K. Arnold admitted that MERS does not have

---

[7] This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County of San Diego: [legal description of property].  Deed of Trust at ¶ R.

a beneficial interest in any mortgage, that it does not loan money, and that it does not suffer a default if a borrower fails to repay a mortgage loan.[8]  Therefore, MERS does not own Mr. Johnson's Note and Mortgage, and did not "grant, assign, or transfer" any interest therein to Bank of America on May 29, 2008, or at any time before or thereafter.

40.    The purported "assignment" of Mr. Johnson's Note and Mortgage is a fraudulent lien claim and in direct contravention of the laws and customs of California.[9]

41.    Therefore, based on the foregoing, MERS did not, *in fact*, assign any interest to HSBC Bank, such that HSBC Bank can demand mortgage payments or report Mr. Johnson's payments as late.

## V.    THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO HSBC BANK

42.    On June 5, 2008, HSBC Bank and/or Bank of America caused the Assignment to be recorded with the County of San Diego.  The Assignment alleged that for "value received" MERS granted, assigned, and transferred to HSBC Bank all beneficial interest in the Deed of Trust.  The Assignment was purportedly signed by "Treva Moreland," as the "Assistant Secretary" of MERS.  Plaintiff alleges that no such transfer ever occurred, and that Treva Moreland is not the "Assistant Secretary" of MERS.

43.    Plaintiff alleges that Treva Moreland is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.[10]

---

[8] *See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.*, Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

[9] "Whatever 'necessary to comply with law or custom' means, and there is no evidence in the record to explaint it, it should not mean that U.S. Bank or MERS' can contract away their obligations to comply with foreclosure statutes."  *In re Salazar*, 448 B.R. 814, 823 (finding that the MERS system is not an alternative to statutory foreclosure laws, which "must be respected," and affirming that "[t]his court …joins the courts in other states that have rejected MERS' offer of an alternative to the public recording system.").  *Id.* at 824.

44.   In fact, the Assignment was fraudulently executed without MERS's or Fremont Investment's knowledge or authorization.

45.   Treva Moreland was never, in any manner whatsoever, appointed as the "Assistant Secretary" by the Board of Directors of MERS, as required by MERS's corporate by-laws and an adopted corporate resolution by the Board of Directors of MERS. For that reason, Treva Moreland never had, nor has, any corporate or legal authority from MERS, or the lender's successors and assigns, to execute the purported "Assignment."[11] This was an intentional act undertaken by HSBC Bank and/or Bank of America, done knowingly with the specific intent that the consequences of their actions be brought to fruition, which they have as evidenced by the instant debt collection activities.

46.   The "Assignment" is a fraudulent lien claim, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection of Plaintiff's mortgage payments, as well as engaging in other debt collection activities.

47.   Plaintiff further alleges that any amount allegedly owed under the Note is subject to equitable offset by the actual, consequential, special, and punitive damages owed to Plaintiff from Defendants, which amount is currently unknown, but will be determined upon conducting discovery. Plaintiff believes this amount will be in excess of the amount of his obligation.

---

[10] A recent "60-Minutes" television news segment reported on the epidemic of "phony" and "forged" documents used to evict homeowners, including the various different and forged signatures of "Linda Green" added to thousands of foreclosure documents filed in foreclosure proceedings all over the country, available at http://www.youtube.com/watch?v=UdeFyPC5MNI. Ms. Green was interviewed by "60-Minutes" and admitted that her signature was forged by many DocX employees who were paid only $10 an hour and required to forge 4,000 documents a day. These individuals are now known as "robo-signers."

[11] The instant case is analogous to *Kingman Holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.*, WL 1883829 (E.D. Tex. 2011) ("*Kingman*"), where the court denied a motion to dismiss with similar causes of action as those that are pled here on the basis that the plaintiff had adequately challenged the signatory's alleged title as "Vice President" of MERS. The *Kingman* court held that the plaintiff had adequately pled that the assignment executed by Nate Blackstun as "Vice President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice President.

48.   Attempting to "assign" or transfer a Deed of Trust by itself, as Defendants did here, does not allow enforcement of Plaintiff's Note and Mortgage.  As alleged herein, Plaintiff's Note was not properly negotiated, endorsed, and transferred HSBC Bank who seeks to cause its purported authorized agent(s) to collect mortgage payments and engage in other unlawful collection practices.

49.   California Commercial Code section 3301 limits a negotiable instrument's enforcement to the following:

> "Person entitled to enforce" an Instrument means (a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

50.   On information and belief, none of the Defendants were/are present holders in due course of Plaintiff's Note such that they can enforce Plaintiff's obligation and demand mortgage payments.

51.   On information and belief, Defendants were not, and are not, a nonholder in possession of Plaintiff's Note who has rights of the holder.

52.   If there is a holder in due course of Plaintiff's Note at issue, pursuant to California Commercial Code section 3301, et seq. and/or the PSA, it is the entity that can establish a pecuniary, legal, and equitable interest in the Property, and provide an unbroken chain of title to Plaintiff's Note and Mortgage.[12]

---

[12] The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re Kemp*, Case No. 08-18700-JHW, (Bankr. D. N.J. November 16, 2010) (for publication) exposed the shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due course" status.  In that case Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement.  Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the original mortgage notes, which were stored in Simi Valley, California, despite securitization contracts that required the notes to be physically transferred to sponsors, trustees or custodians of the securitized

VERIFIED COMPLAINT                                                                    -16-

53.     On information and belief, none of the Defendants were/are entitled to enforce Plaintiff's Note pursuant to § 3309 or subdivision (d) of § 3418.

54.     Plaintiff alleges that, prior to demanding mortgage payments from Mr. Johnson, none of the Defendants or Doe Defendants had, nor presently have, a secured or unsecured legal, equitable, or pecuniary interest in Plaintiff's Note and/or Deed of Trust as required under California law – irrespective of who is actually in physical possession of Mr. Johnson's Note.

55.     Plaintiff alleges that, on information and belief, HSBC Bank, Bank of America and/or its agents are fraudulently enforcing a debt obligation in which they have no pecuniary, equitable or legal interest.  Thus, HSBC Bank and Bank of America's conduct is part of a fraudulent debt collection scheme.

## VI.   THE FABRICATED SUBSTITUTION OF TRUSTEE IS A FRAUDULENT DOCUMENT THAT CONVEYED NO LEGAL AUTHORITY TO QUALITY TO ACT AS THE SUBSTITUTED TRUSTEE

56.     The Deed of Trust names Fremont General Credit Corporation as Trustee.

57.     On October 6, 2010, HSBC Bank caused a document purporting to be a Substitution of Trustee ("Substitution") to be recorded with the County of San Diego. The Substitution alleged that "the present Beneficiary under said Deed of Trust...hereby substitutes Quality Loan Service Corporation,... as Trustee under said Deed of Trust." The Substitution was purportedly signed by "Michael L. Prindle," as a "Vice President"

---

trusts. The findings in court decisions all over the country, news stories, attorneys generals' complaints, and state and federal investigations reveal that business practices like Countrywide's were common place and, like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans. Ms. Martini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide securitizaton trust, and found that none of the 104 loans that were examined were endorsed by Countrywide: "..If the lack of endorsement on these notes is typical—and 104 out of 104 suggests it its—the problem occurs across Countrywide securities." *See* Abigail Field, *At Bank of America, More Incomplete Mortgage Docs Raise More Questions,* Fort., (June 3, 2011), http://finance.fortune.cnn.com/2011/06/03/at-bank-of/america-more-incomplete-mortgage-docs-and-more-questions/.

of HSBC Bank.  Plaintiff alleges that no such transfer ever occurred, and that Michael L. Prindle is not the "Vice President" for HSBC Bank.

58.   Provision 24 of the Deed governs the Substitution of Trustee.  It provides in relevant part:

> "**Lender**, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument **executed and acknowledged by Lender**.......This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution."

59.   In violation of Provision 24, and Cal. Civ. Code section 2934(a), the lender party failed to file a valid Substitution of Trustee, substituting Quality Loan Service Corporation, as the new trustee.  Plaintiff alleges the recorded Substitution is void because HSBC Bank was not the current "Lender" at the time of the execution the Substitution.

60.   HSBC Bank and/or Quality Loan Service Corporation (hereinafter "Quality") (in its capacity as the purported substituted trustee) recorded a Substitution of Trustee claiming that as the present beneficiary, HSBC Bank desired to substitute Quality in as the trustee.  Plaintiff alleges that no such substitution occurred.

61.   Plaintiff alleges that Michael L. Prindle is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

62.   Michael L. Prindle is not a "Vice President" for HSBC Bank and in fact, the Substitution was fraudulently signed without HSBC Bank's knowledge or authorization.

63.   Michael L. Prindle was never, in any manner whatsoever, appointed as a "Vice President" by HSBC Bank, and thus giving him no corporate or legal authority from HSBC Bank, or the lender's successors and assigns, to execute the purported "Substitution."  This was an intentional act undertaken by HSBC Bank and/or Quality, done knowingly with the specific intent that the consequences of their actions be

VERIFIED COMPLAINT                                                                                          -18-

brought to fruition, which they have as evidenced by the instant debt collection activities.

64.    The "Substitution" is a fraudulent document, and the execution, filing, and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive, and unlawful collection and attempts to collect on Plaintiff's obligation.

65.    Attempting to "substitute" Quality under said Deed of Trust, as Defendants did here, does not allow Quality to act as the under the Deed of Trust.

## VII.   PLAINTIFF'S LOAN MODIFICATION AND DEBT VALIDATION EFFORTS

66.    In July 2009, Plaintiff initiated loan modification negotiation efforts with Wilshire, Plaintiff's original servicer.

67.    In September 2009, Plaintiff was granted a trial loan modification plan from Wilshire.  Plaintiff timely sent nine payments according to this plan until his loan was sold or transferred to Bank of America.

68.    After nine payments mad under the loan modification plan, Bank of America refused to honor or acknowledge the trial plan.

69.    On June 8, 2010, after months of paying the trial modification plan payments Plaintiff re-applied for another loan modification and sent Bank of America a full packet to review that had a verified receipt on June 9, 2010.

70.    On July 6, 2010, Plaintiff called for the status of the second loan modification review and he was told the packet was "not in the system".

71.    On July 8, 2010, Plaintiff resent the packet to Bank of America for review.

72.    On July 22, 2010, Plaintiff again called for the status of the review of his packet for a loan modification and was told that the loan modification packet was not in the system and the only paper received was the cover sheet.  However, both times the loan modification packet was sent Bank of America did acknowledge receipt.

73.   On July 22, 2010, Plaintiff, for the third time, sent Bank of America the loan modification packet.

74.   On July 27, 2010, Plaintiff called again to check the status of the review of his loan modification package and Bank of America finally confirmed the packet was received and in their system.

75.   On August 19, 2010, Plaintiff called to check the status of the review and was told that his loan modification was declined on August 8, 2010 because the trial payments were not made.

76.   On September 10, 2010, Plaintiff called for a status update and was told his packet was under review and that Bank of America needed a hardship letter and copies of his taxes.  Plaintiff had sent both of these documents three times.

77.   On September 22, 2010, Plaintiff called for a status update and was told his loan modification was declined due to "ineligibility" and Bank of America told him that he needed to reapply.

78.   Starting on October 20, 2010, through January 12, 2011, Plaintiff called each month a few times for a status update and was told that his packet was under review.

79.   Finally, on January 18, 2011, Plaintiff was sent a loan modification with an effective date of February 1, 2011.

80.   Bank of America informed Plaintiff that he was to send $3,653.00 by January 24, 2011 and his first loan modification payment by February 1, 2011.

81.   On or around January 20, 2011, Plaintiff's counsel wrote Bank of America requesting that Bank of America extend a courtesy to Plaintiff to split the payment of $3,653.00 in two payments.  The first installment of $1,500.00 was sent with this request in letter and the second installment was to be sent by the end of January 2011. Plaintiff was offering to pay the first loan modification payment on February 1, 2011 as requested.

82.     Bank of America never responded to this request.  However, Bank of America cashed the $1,500.00 that was sent and thereafter cancelled Plaintiff's loan modification.

83.     In an effort to verify and validate his debt, Mr. Johnson sent a Qualified Written Request letter on or around March 7, 2011, pursuant to Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e), in which he requested that the purported servicer (Bank of America) provide, among other things, "The name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note."  12 U.S.C. § 2605(e) requires that the servicer provide this information and respond to a written request within 60 days of receipt.  *See* **Exhibit "C"**, attached hereto is a true and correct copy of Plaintiff's Qualified Written Request.  On May 5, 2011 Bank of America responded to Plaintiff's request but informed Plaintiff that he could expect a response within twenty business days.  *See* **Exhibit "D"**, attached hereto is a true and correct copy of Bank of America's response to Plaintiff's Qualified Written Request.  However, Bank of America has not been sent and Plaintiff's inquiries are still unanswered.

## VIII.   PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER, SIGNIFICANT MONETARY, LEGAL, AND EQUITABLE DAMAGES

84.     The conduct described above by HSBC Bank, Bank of America and/or Quality, was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage.  However, despite such knowledge, said Defendants continued to demand and collect Plaintiff's mortgage payments.

85.     Defendants engaged and are engaging in a pattern and practice of defrauding Plaintiff, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

86.     On information and belief, at all times material, HSBC Bank and Bank of America had and have actual knowledge that Plaintiff's accounts were not accurate, but that Plaintiff would continue to make further payments based on Defendants' inaccurate accounts.

87.     On information and belief, Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiff's accounts.

88.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff overpaid in interest.

89.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff's credit and credit score have been severely damaged.  Specifically, because of the derogatory credit reporting on his credit report by HSBC Bank and/or Bank of America, Mr. Johnson is unable to refinance out his present loan, buy another property, or sell his home.

90.     As a direct and proximate result of the actions of the Defendants set forth above, the title to Plaintiff's home has been slandered, clouded, and its salability has been rendered unmarketable.

91.     As a direct and proximate result of the actions of the Defendants set forth above, Plaintiff does not know who the current beneficiary of his Note and Mortgage actually is, such that he is now subject to double financial jeopardy.

92.     As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiff's debt obligation.

93.     The conduct of HSBC Bank, Bank of America and one or more of the Doe Defendants has led to the imminent loss of Plaintiff's home and to pecuniary damages. The pecuniary damages include, but are not limited to, the costs of over calculation and overpayment of interest, the costs of repairing Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, the costs associated with removing the cloud from his property title and attorneys' fees, in an amount to be proven at trial.

94.     The conduct of HSBC Bank, Bank of America, and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiff's Note and Deed of Trust, yet they intentionally and fraudulently covered up this defect by wrongfully recording a fraudulent Assignment, which would enable them to ***illegally and fraudulently*** collect on Plaintiff's debt, and which in essence has rendered the title to the property unmarketable.

95.     The title to Plaintiff's Property has been rendered unmarketable and unsalable because of the possibility of multiple claims being made against Plaintiff's debt and underlying security (the Subject Property).  If the Assignment of Deed of Trust is not cancelled and set aside, Plaintiff will be incurably prejudiced.  Plaintiff will be denied the opportunity to identify and negotiate with his ***true creditor*** and exercise his right to verify and validate his debt.

96.     Plaintiff has offered to and is ready, willing, and able to unconditionally tender his obligation.[13]

---

[13] Case law makes clear that **Plaintiff is only required to allege a credible offer of tender**, not actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) ("...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is ***not*** required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 AHM, 2011 WL 2533029 (C.D.Cal June 24, 2011), at *16 (emphasis added) (citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957). See also, *Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31. 2011) ("...requiring plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.")  In light of the fact that Plaintiff contests the legitimacy of the Defendants' claim to the mortgage payments, it would be ***illogical and inequitable*** to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

VERIFIED COMPLAINT                                                                                                      -23-

# FIRST CAUSE OF ACTION – DECLARATORY RELIEF: TO DETERMINE STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]

### [Against All Defendants and Doe Defendants]

97.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

98.   Section 2201(a) of Title 28 of the United States Code states:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

99.   Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

100.   Plaintiff alleges that neither HSBC Bank nor Bank of America have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignment has no value since the Deed of Trust is wholly unsecured.

101.   On or about May 29, 2008, Defendants claim they have a secured enforceable interest in, and perfected lien against, the Plaintiff's Note, Deed of Trust and Property.

102.   Thus, the competing allegations made by Plaintiff, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the Property.

103.   Accordingly, Plaintiff requests that the Court make a finding and issue appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

104.   Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify his true and current creditor/lender and negotiate with them; (2) he will be denied the right to conduct discovery and have HSBC Bank claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) he will be denied the opportunity to discover the true amount he still owes minus any illegal costs, fees and charges.

105.   Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether HSBC Bank's claim against Plaintiff is enforceable and whether it is secured or unsecured by an right, title, or interest in Plaintiff's Property.

106.   Furthermore, the conduct of HSBC Bank and Bank of America, and Quality as their agent, and one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people.  Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION – NEGLIGENCE

### [Against All Defendants and Doe Defendants]

107.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

108.   At all times relevant herein, Bank of America was acting as a purported agent for HSBC Bank.  Defendants are jointly and severally liable for HSBC Bank and/or Bank of America's negligent and reckless conduct.

109.   HSBC Bank as the purported beneficiary of the Note and Deed of Trust, and Bank of America as purported mortgage servicer, all have a duty to exercise reasonable care[14] and skill to follow California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that they did not have the legal authority to do.  This includes not collecting or demanding mortgage payments when they do not have the right to enforce the obligation, causing the Plaintiff to overpay in interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of Plaintiff's mortgage payments, credits, and debits (if Bank of America is in fact the legally authorized mortgage servicer for Plaintiff).

110.   HSBC Bank and Bank of America have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do.  As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, the Chain of Title to Plaintiff's Property has been rendered unmarketable and fatally defective and has caused Plaintiff to lose saleable title to the subject property.

111.   HSBC Bank and Bank of America breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and Deed of Trust into the Ellington Trust by the closing date.

---

[14] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991).  However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care.  *Das v. Bank of Am.*, 186 Cal. App. 4th 727, 741 (2010).  Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* (citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45).

112.   As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trial, including attorneys' fees and costs of bringing suit to dispute, validate, and challenge said Defendants' purported rights to enforce his debt obligation against him.

## THIRD CAUSE OF ACTION – QUASI CONTRACT

### [Against All Defendants and Doe Defendants]

113.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

114.   HSBC Bank and/or Bank of America demanded monthly mortgage payments from Plaintiff and continued to collect payments from Plaintiff.  Plaintiff reasonably relied upon HSBC Bank and/or Bank of America's assertion that it/they are/were entitled to the benefit of Plaintiff's mortgage payments.

115.   HSBC Bank and/or Bank of America knowingly accepted payments and retained them for its own use knowing that HSBC Bank and/or Bank of America did not acquire an interest in Plaintiff's Note, such that they could accept or keep Plaintiff's payments.  It would be inequitable for HSBC Bank and/or Bank of America to retain the payments it received from Plaintiff which it did not have legal authority to collect.  The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

116.   Section 23 of the Deed of Trust states that: "Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee.  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it."  The obligations to Fremont Investment under the Deed of Trust were fulfilled when Fremont Investment

1    received the balance on the Note as proceeds of sale of Plaintiff's Note and Mortgage to

2    a presently unknown entity.  Fremont Investment has been unjustly enriched by

3    collecting monthly payments from Plaintiff when it has no interest in his Note.

4        117.   Plaintiff seeks restitution for any payments he made to HSBC Bank and/or

5    Bank of America that were not paid to the lender or beneficiary, if any.

6    **FOURTH CAUSE OF ACTION - VIOLATION OF 12 U.S.C. § 2605 (RESPA)**

7    **[As Against Bank of America and one of more of the Doe Defendants]**

8        118.   Plaintiff hereby incorporates by reference each and every one of the

9    preceding paragraphs as if the same were fully set forth herein.

10       119.   The Subject Loan is a federally regulated mortgage loan and is subject to

11   the federal Real Estate Procedures Act (RESPA) and its implementing regulation,

12   Regulation X.

13       120.   On or about March 7, 2011, Plaintiff sent a Qualified Written Request,

14   ("QWR") via U.S. Post Certified Mail. *See* **Exhibit "C".**

15       121.   On information and belief and/or Bank of America received the QWR on or

16   about March 12, 2011.

17       122.   The QWR contained information to enable Bank of America to identify

18   Plaintiff's Loan and also contained requests for information of the loan, specifically the

19   identity and contact information of the holder in due course of Plaintiff's Note,

20   accumulated late fees and charges, and requested information to verify the validity of

21   the purported debt owed to HSBC Bank and Bank of America.

22       123.   Bank of America did not provide the contact information for the purported

23   holder of Mr. Johnson's Note, as required by § 2605, et seq.  Instead, Bank of America

24   responded by providing a partial account history of Plaintiff's account.  Bank of

25   America's responses did not respond to Plaintiff's request and did not comply with the

26   requirements of § 2605, et seq.

27       124.   Because the Mortgage Loan is subject to RESPA and Regulation X, all

28   Defendants were required to comply with Section 6 of RESPA appearing at 12 U.S.C.

1  § 2605. Defendant violated Section 6 of Regulation X upon receipt of Plaintiff's QWR

2  by their actions including, but not limited to: (a) failure to make appropriate corrections

3  in the account of the borrower, including the crediting of any late charges or penalties,

4  and transmit to the borrower a written notification of the correction; and (b) failure to

5  protect Plaintiff's credit rating upon receipt of Plaintiff's QWR by furnishing adverse

6  information regarding payment to credit reporting agencies as defined in § 603 of the

7  Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

8      125.   Thus, HSBC Bank violated 12 U.S.C. § 2605 and is subject to statutory

9  damages, civil liability, penalties, attorneys' fees and actual damages. *See* 12 U.S.C.

10  § 2605. The actual pecuniary damages include, but are not limited to, the over

11  calculation and overpayment of interest on Plaintiff's loan, the costs of repairing

12  Plaintiff's credit, the reduction and/or elimination of Plaintiff's credit limits, costs

13  associated with removing the cloud on his property title and setting aside the trustee's

14  sale, and attorneys' fees and costs, in an amount to be proven at trial, but in excess of

15  $75,000.00.

16      126.   As a direct and proximate result of the violations of RESPA and Regulation

17  X by Bank of America Plaintiff has suffered actual pecuniary damages, including but

18  not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be

19  proven at trial.

20  **FIFTH CAUSE OF ACTION – FOR VIOLATION OF 15 U.S.C. § 1692, ET SEQ.**

21  **[Against All Defendants and Doe Defendants]**

22      127.   Plaintiff hereby incorporates by reference each and every one of the

23  preceding paragraphs as if the same were fully set forth herein.

24      128.   Federal law prohibits the use of "any false, deceptive, or misleading

25  representation or means in connection with the collection of any debt… including the

26  false representation of… the character, amount, or legal status of any debt… and the

27  threat to take any action that cannot legally be taken…"

28

129.   In illegally attempting to collect on Plaintiff's debt obligation in the manner described herein, Defendants HSBC Bank, as the purported assignee, and Bank of America, as purported mortgage servicer:

    (a)    falsely represented the status of the debt, in particular, that it was due and owing to Defendant HSBC Bank at the time the suit was filed;

    (b)    falsely represented or implied that the debt was owing to Defendant HSBC Bank as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

    (c)    threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

    (d)    attempted to collect on the promissory note under false pretenses; namely that HSBC Bank was assigned Plaintiff's debt when in fact they were not.

## SIXTH CAUSE OF ACTION – VIOLATION OF
## BUS. AND PROF. CODE SECTION 17200, ET SEQ.

### [Against All Defendants and Doe Defendants]

130.   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

131.   Defendants' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605(e), et seq.

132.   Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal Code section 532(f)(a)(4).

133.   Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

134.   As more fully described above, Defendants' acts and practices are unlawful, unfair, and fraudulent.  This conduct is ongoing and continues to this date.

135.   Defendants engage in unfair, unlawful[15], and fraudulent business practices with respect to mortgage loan servicing, and related matters by, among other things:

(a)   executing and recording false and misleading documents;[16]

(b)   executing and recording documents without the legal authority to do so;

(c)   failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

(d)   demanding and accepting payments for debts that were non-existent;

(e)   violating the Security First Rule;

(f)   reporting payments as late to credit bureaus without the legal right or authority to do so;

(g)   acting as a beneficiary without the legal authority to do so, and;

(h)   other deceptive business practices as described herein.

136.   As more fully described above, Defendants' acts and practices are likely to deceive members of the public.

137.   As more fully described above, Defendants' acts and practices are unfair and the harm caused by the conduct outweighs any benefits that the conduct may have.

138.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants violate several laws including Cal. Bus. and Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

---

[15] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Saunders v. Superior court*, 27 Cal.4th 832 (1994); *Hewlett v. Squaw Valley*, 54 Cal.4th 499 (1997).

[16] Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532(f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that Defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

139. Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

140. The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

141. By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and 17204.

142. As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that a cloud has been placed upon title to Plaintiff's Property and Defendants, have failed to remove this cloud from Plaintiff's title.

143. Plaintiff is entitled to an order compelling HSBC Bank, Bank of America, and any other defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon his title and an order enjoining such Defendants from taking such actions again in the future.

## SEVENTH CAUSE OF ACTION – ACCOUNTING

### [Against All Defendants and Doe Defendants]

144. Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

145. HSBC Bank, and Bank of America as its purported agent, have held themselves out to be Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with Plaintiff, said Defendants have a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff.[17]

---

[17] To state a cause of action for accounting, a plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim

VERIFIED COMPLAINT                                                                              -32-

146.   As a result of the aforementioned fraudulent conduct, Plaintiff paid HSBC Bank and/or Bank of America his mortgage payments for a period of approximately four and a half years.  However, for the reasons stated herein, none of this money was actually owed to HSBC Bank and/or Bank of America.  For that reason, these monies are due to be returned to Plaintiff in full.

147.   The amount of the money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.  Plaintiff is informed and believes and thereon alleges that the amount due to them exceeds $75,000.00.

WHEREFORE, Plaintiff prays as follows:

1.   For compensatory, special and general damages in an amount according to proof at trial, but not less than $5,000,000, against all Defendants;

2.   For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.   For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiff's title to the Property, including the purported Assignment of Deed of Trust;

4.   For an order finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiff's Promissory Note, Plaintiff's Deed of Trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiff;

5.   For the Court to issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

---

for accounting are:  1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to the Plaintiff that can only be ascertained by an accounting.  *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.).

VERIFIED COMPLAINT

6.     For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

7.     For costs of suit incurred herein;

8.     For reasonable attorneys' fees incurred; and

9.     For such other and further relief as the Court may deem proper.

Dated: September 1℃, 2011                    PROSPER LAW GROUP, LLP

By: _____
Gordon F. Dickson
Deborah P. Gutierrez
Hazel S. Chu
Attorneys for Plaintiff,
Gregory Johnson

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I, Gregory Johnson, am the Plaintiff in the above-entitled action. I have read the above Verified Complaint, and I have personal knowledge of the matters stated herein except as to those matters stated upon information or belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct as executed this ___ day of September 2011, in the City of Oceanside, County of San Diego.

By: _Gregg Johnson_

Gregory Johnson

VERIFIED COMPLAINT

# DEMAND FOR JURY TRIAL

Plaintiff Gregory Johnson hereby demands a trial by jury on all claims.

Dated: September 1 2 , 2011                    PROSPER LAW GROUP, LLP

By: _____
Gordon F. Dickson
Deborah P. Gutierrez
Hazel S. Chu
Attorneys for Plaintiff,
Gregory Johnson