**PROSPER LAW GROUP, LLP**
Gordon F. Dickson, Esq. SBN 136857
Deborah P. Gutierrez, Esq. SBN 240383
6100 Center Drive, Suite 1050
Los Angeles, CA 90045
Telephone:   (310) 893-6203
Facsimile:    (310) 988-2930
Email:         deborah@prosperlaw.com

Attorneys for Plaintiff,
Gregory Johnson

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY JOHNSON, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR THE ELLINGTON TRUST SERIES 2007-1; BANK OF AMERICA, N.A.; and Does 1 – 10, inclusive,<br><br>        Defendants. | **Case No. 11-cv-2091-JM-WVG**<br><br>**Honorable Jeffrey T. Miller**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE COMPLAINT**<br><br>**Date: March 5, 2012**<br>**Time: 10:00 a.m.**<br>**Ctrm.: 16** |

Plaintiff Gregory Johnson ("Plaintiff") by and through his attorneys of record hereby oppose Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Complaint. This opposition is based on all the papers on file with the

1

1  Court, the arguments set forth, and any arguments made by Plaintiff's counsel at

2  the hearing currently scheduled for this matter.

3

4

5  Dated:        February 17, 2012              **PROSPER LAW GROUP, LLP**

6

7                                      By:   /s/ Deborah P. Gutierrez

8                                            Gordon F. Dickson
                                             Deborah P. Gutierrez
                                             Attorney for Plaintiff,
9                                            Gregory Johnson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 7

II.   STATEMENT OF FACTS .................................................................. 7

III.  STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL
      PROCEDURE 12(b)(6) ...................................................................... 8

IV.   LEGAL ARGUMENTS........................................................................ 9

    A.    The Purported Assignment To HSBC Bank, as Trustee Of The
       Ellington Trust, is Invalid and Unenforceable ..................................... 9

       1.    New York Trust Law Requires Strict Compliance With the
           Terms of Governing Trust Agreement........................................ 9

       2.    The Underlying Reasons For the Technical Requirements of
           the PSA........................................................................... 11

       3.    Plaintiff Sufficiently Alleges the Assignment is Fabricated.... 12

    B.    Plaintiff has Standing to Assert that HSBC Bank and Bank of
       America Are Not His Creditors........................................................... 12

       1.    Plaintiff Meets the Article III Requirements............................ 13

       2.    Plaintiff Meets the Prudential Considerations ......................... 14

    C.    Plaintiff's Challenge to HSBC Bank's Authority is Proper............... 15

    D.    Plaintiff Is Not Required to Tender.................................................... 17

    E.    Plaintiff Has Alleged an Actual Controversy Among the Parties
       Sufficient to Maintain a Cause of Action for Declaratory Relief ...... 18

    F.    Plaintiff Has Sufficiently Alleged a Cause of Action for Negligence 19

    G.    Plaintiff Has Sufficiently Plead a Quasi-Contract Claim................... 20

    H.    Plaintiff Made a Proper Qualified Written Request under RESPA ... 21

    I.    Bank of America is a "Debt Collector" Under the Fair Debt
       Collection Practices Act ("FDCPA") ................................................. 23

J.   Plaintiff Has Sufficiently Alleged a Claim Under California Business and Professions Code Section 17200 ................................... 24

K.   Plaintiff Has Sufficiently Alleged an Accounting Claim.................. 25

L.   Plaintiff's Prayer for Punitive Damages Should Not be Stricken...... 26

M.   Plaintiff is Entitled to Attorneys Fees Under RESPA........................ 27

N.   The Lis Pendens Should Not Be Expunged ....................................... 27

V.   CONCLUSION............................................................................. 28

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. of Harford, Conn. v. Haworth,*
    300 U.S. 227, 240 (1937) ................................................................ 12, 18

*Ansanelli v. JP Morgan Chase Bank, N.A.,*
    2011 WL 1134451 (N.D. Cal. March 28, 2011) ................................ 19

*Baker v. Carr,*
    369 U.S. 186, 204, 82, S.Ct. 691 (1962). ......................................... 13

*Bank of the West v. Sup. Ct.,*
    2 Cal.4th 1254 (1992) ...................................................................... 24

*Bell Atlantic Corp. v. Twombly,*
    55 US 544 (2007) .............................................................................. 8

*Berryman v. Merit Property Management, Inc.,*
    152 Cal.App. 4th 1544 (2007) ......................................................... 24

*Brousseau v. Jarrett,*
    73 Cal.App. 3d 864 (1977) ............................................................... 25

*Brown v. Spohr,*
    180 N.Y. 201 (N.Y. 1904) .................................................................. 9

*Burgoyne v. James,*
    282 N.Y.S. 18 (1935) ......................................................................... 9

*Catalan v. GMAC Mortg. Corp.,*
    629 F.3d 676 (7th Cir. 2011) ........................................................... 21

*Cervantes v. City of San Diego,*
    5 F.3d 1273 (9th Cir. 1993) ............................................................... 7

*Chazen v. Centennial Bank,*
    61 Cal. App. 4th 532 (1998) ............................................................ 19

*Chern v. Bank of America,*
    15 Cal.3d 866 (1976) ....................................................................... 24

*Clauson v. Sup.Ct. (Pedus Services, Inc.),*
    67 Cal App. 4th 1253 (1998) ........................................................... 26

*Comm. on Children's Television v. General Foods Corp.,*
    35 Cal. 3d 197 (1983) ...................................................................... 26

*Conley v. Gibson,*
    355 U.S. 41 (1957) ............................................................................ 7

*Das v. PHH, N.A.,*
    186 Cal. App. 4th 727 (2010) .......................................................... 19

*First Nationwide Savings v. Perry,*
    11 Cal.App.4th 1657 (1992) ............................................................ 20

*Fontenot v. Wells Fargo Bank, N.A.,*
    198 Cal. App. 4th 256 (2011) .......................................................... 14

*Foulkrod v. Wells Fargo Financial California Inc.,*

No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011)..........................................16
*Gilligan v. Jamco Dev. Corp.,*
   108 F.3d 246 (9th Cir. 1997).................................................................................7
*Gladstone Realtors v. Village of Bellwood,*
   441 U.S. 91 (1979).............................................................................................12
*Gomes v. Countrywide,*
   192 Cal. App. 4th 1149 (2011)...........................................................................15
*Hartford Fire Ins. Co. v. California,*
   509 U.S. 764 (1993)..............................................................................................7
*In re Chalgren,*
   No. 09-56729/Adv. Proc. No. 10-5057 (N.D. Cal., October 7, 2011)...................21
*In re Estate of Plotkin,*
   290 N.Y.S. 2d 46, (N.Y. Sur. 1968)......................................................................9
*Kunert v. Mission Financial Services Corp.,*
   1 Cal.Rptr.3d 589 (2003) ...................................................................................24
*Lazar v. Trans Union LLC,*
   195 FRD 665 (C.D. CA  2000) ...........................................................................25
*Lectrodryer v. SeoulBank,*
   77 Cal. App. 4th 723 (2000)...............................................................................20
*Lona v. Citibank, N.A.,*
   2011 WL 6391584 (Cal. App. 6 Dist. Dec. 21, 2011) ...................................16, 17
*Louiseau v. VISA USA Inc.,*
   WL 4542896 (S.D. Cal. 2010) ...........................................................................20
*Luciw v. Bank of America, N.A.,*
   2010 WL 3958715 (N.D. Cal. 2010); .............................................................21, 22
*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 560, 112 S. Ct. 2130 (1992)...................................................12, 13
*Maryland Cas. Co. v. Pacific Coal & Oil Co.,*
   312 U.S. 270 (1941) ...........................................................................................17
*Mayfield v. First Nat'l Bank of Chattanooga,*
   137 F. 2d 1013 (6th Cir. 1943)............................................................................9
*McBride v. Boughton,*
   123 Cal. App. 4th 379 ........................................................................................20
*McKell v. Washington Mut., Inc.,*
   142 Cal. App. 4th 1457 (2006)...........................................................................20
*Multimedia Patent Trust v. Microsoft Corp.,*
   525 F.Supp.2d 1200 (S.D. CA 2007)..................................................................25
*Onofrio v. Rice,*
   55 Cal. App. 4th 413 (1997)..........................................................................16, 17
*Osei v. Countrywide Home Loans,*
   692 F.Supp.2d 1240 (2010).................................................................................19

-4-
TABLE OF CONTENTS

*Perkins v. Sup.Ct. (General Tel. Directory Co.)*,
    117 Cal. App. 3d 1 (1981)........................................................................26

*Peterson v. Cellco Partnership*,
    164 Cal. App. 4th 1583...........................................................................20

*Qualimane Co. v. Stewart Title Guaranty Co.*,
    19 Cal.4th 26 (1998)..............................................................................26

*Rawlings v. Dovenmuehle Mortg., Inc.*,
    64 F.Supp.2d 1156 (M.D. Ala. 1999) ...................................................22

*Rutman Wine Co. v. E. & J. Gallo Winery*,
    829 F.2d 729 (9th Cir. 1987).....................................................................8

*Sacchi v. Mortgage Electronic Registration Systems, Inc.*,
    No. CV 11-1658 AHM, 2011 WL 2533029 (C.D. Cal. June 24, 2011).........14, 16, 17

*Schafer v. CitiMortgage, Inc.*,
    No. CV 11-03919 ODW, 2011 WL 2437267 (C.D. Cal. June 15, 2011)...................14

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ............................................................................6, 8

*Seattle Audubon Soc'y v. Moseley*,
    80 F.3d 1401 (9th Cir. 1996)..................................................................18

*SEC v. Sands*, 902 F.Supp.
    1149 (C.D. CA 1995)..............................................................................25

*Stockton v. Newman*,
    148 Cal. App. 2d 558 (1957)..................................................................16

*Tamburri v. Suntrust Mortgage, Inc.*,
    No. C-11-899 EMC, 2011 WL 6294472 (N.D. Cal. Dec. 15, 2011)........................12

*Teselle v. McLoughlin*,
    173 Cal. App. 4th 156 (2009)..................................................................25

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*,
    454 U.S. 464 (1984)...............................................................................13

*Vogan v. Wells Fargo et al.*,
    No. 11-cv-2098-JAM-KJN, 2011 WL 5826016
    (N.D. Cal. Nov. 11, 2011).................................................11, 14, 16, 17

*Yulaeva v. WAMU Mortg. Funding, Inc.*,
    No. 09-cv-1504, 2009 WL 2880393 (E.D. Cal. 2009) ..........................22

**<u>Statutes</u>**

12 U.S.C. § 2605(e)(1)(A) ............................................................................21
12 U.S.C. § 2605(e)(1)(b) ............................................................................21
12 U.S.C. § 2605(f)(3) ..................................................................................26
12 U.S.C. section 2605(e)(2)..........................................................................21
15 U.S.C. § 1692a(6)......................................................................................23
15 U.S.C. 1692A(6)(F)(iii).............................................................................23

28 U.S.C. Section 2201(a)............................................................................17
California Business and Professions Code Section 17200 ......................23, 24
California Civil Code § 2924 ......................................................................14
California Civil Code § 2924(a)(1) .............................................................15
Title 28 U.S.C. Section 2201 .....................................................................14

**Other Authorities**
Real Estate Mortgage Investment Conduit ................................................10

REMIC .....................................................................................................10

Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.) .........25


**Rules**
Federal Rules of Civil Procedure, Rule 12(b)(6) ..........................................7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Through the instant lawsuit, Plaintiff Gregory Johnson (hereinafter "Mr. Johnson" or "Plaintiff") will establish that Defendants Bank of America, N.A. (hereinafter "Defendant" or **"Bank of America"** in its capacity as purported mortgage servicer) and HSBC Bank USA, National Association (hereinafter **"HSBC Bank"**) as Trustee for the Ellington Trust Series 2007-1 (hereinafter **"Ellington Trust"**) (in its capacity as purported assignee of Plaintiff's Deed of Trust) (collectively "Defendants") are not his true creditors and as such have no legal, equitable, or pecuniary right in the debt obligation secured by the real property located at 1522 Avenida Andante, Oceanside, California 92056 (the "Property").

Plaintiff has sufficiently pled both plausible factual allegations, as well as legal claims, to enable his Complaint to move forward.  This is not the phase in litigation to weigh the merits of the case.  In reviewing the sufficiency of the claims asserted, the issue *is not* whether Plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims asserted.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## II.    STATEMENT OF FACTS

On December 19, 2006, Plaintiff executed a promissory note ("Note") in favor of Freemont Investment & Loan ("Fremont Investment"), secured by a deed of trust ("Deed of Trust" or "Mortgage," and together with the Note hereinafter "Loan") for the finance of the purchase of his home.  (Complaint ("Compl.") ¶ 24.)  Shortly after the origination of Plaintiff's debt obligation, the originating lender sold the debt obligation, although it is currently unknown to whom it was sold or whether the Note and Deed of Trust were assigned to this entity. (Compl. ¶ 25.)  Plaintiff has learned that his Note and Deed of Trust were never validly assigned to the Ellington Trust.  Specifically, Plaintiff alleges that there was no compliance with the Ellington Trust Agreement (the "Pooling

and Servicing Agreement" or "PSA"), the consequence of which is that the Note and Mortgage were not, and are not, part of the Ellington Trust's trust res.  (Compl. ¶¶ 26-27, 29-30.)

Plaintiff alleges that in order for the Note and Mortgage to be a part of Ellington Trust's trust res, the Note must have been assigned to the Sponsor, Depositor, and HSBC Bank, as trustee for the Ellington Trust, before the "Closing Date" of the Ellington Trust.  (Compl. ¶ 27, 30.)   Instead, a "Corporate Assignment of Deed of Trust," (hereinafter the purported "Assignment") which purports that Mortgage Electronic Registration Systems ("MERS"), as nominee for Fremont Investment, "hereby grants, assigns, and transfers" the Deed of Trust to HSBC Bank, is dated May 29, 2008, after the Ellington Trust's Closing Date.  (Compl. ¶ 27, Ex. A.)

On March 7, 2011, Mr. Johnson sent Bank of America, the purported mortgage servicer, a Qualified Written Request ("QWR").  (Compl. ¶ 83, Ex. C.)  After sending an acknowledgement on May 5, 2011, Bank of America failed to provide any substantive response whatsoever.  (Compl. ¶ 83, Ex. D.)

## III.   STANDARD FOR DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Motions to dismiss for failure to state a claim under Federal Rules of Civil Procedure, Rule 12(b)(6) are viewed with disfavor, and accordingly, dismissals for failure to state a claim are "rarely granted." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).  The standard for dismissal under Rule 12(b)(6) is a stringent one.  "[A] complaint should not be dismissed for failure to state a claim unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) *(quoting Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (emphasis added). The purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of

the statement of the claim for relief in the complaint.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  The complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true. *See, Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  It is *not* a procedure for resolving a contest about the facts or the merits of the case.  In reviewing the sufficiency of the complaint, the issue is not whether the plaintiff will ultimately prevail, but whether the Plaintiff is entitled to offer evidence to support the claims asserted.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).  Furthermore, more recently, the U.S. Supreme Court has held that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, would "state a claim to relief that is plausible on its face." *See Bell Atlantic Corp. v. Twombly*, 55 US 544 (2007).

## IV.   **LEGAL ARGUMENTS**

### A.   **The Purported Assignment To HSBC Bank, as Trustee Of The Ellington Trust, is Invalid and Unenforceable**

#### 1.   **New York Trust Law Requires Strict Compliance With the Terms of Governing Trust Agreement**

Plaintiff's Deed of Trust was executed in favor of Fremont Investment.  Since neither HSBC Bank nor the Ellington Trust was the originator of the Mortgage, any purported rights over Plaintiff's debt obligation must be pursuant to a valid assignment or transfer of the Note to the Trustee of the Ellington Trust.

The Ellington Trust is a special purpose vehicle created by a document called a Pooling and Servicing Agreement.  The PSA is a complex and voluminous document, which in addition to creating the Trust, also defines the rights, duties and obligations of the parties to the Trust Agreement.  The Ellington Trust is governed by New York law.

1   (Compl. ¶ 30.)  Thus, New York's common law trust principles, which are well-settled,

2   are relevant to the analysis of Plaintiff's claims.[1]

3        Under New York law, for a trust to be valid, there are four essential elements:  (1)

4   a designated beneficiary; (2) a designated trustee who is not the beneficiary; (3) a fund

5   or other property sufficiently designated or identified to enable title thereto to pass to the

6   trustee; and (4) actual delivery or legal assignment of the property to the trustee, with

7   the intention of passing legal title to the trustee.  *Brown v. Spohr*, 180 N.Y. 201, 209-210

8   (N.Y. 1904).  Plaintiff alleges that with respect to his Loan, there was no actual delivery

9   or valid assignment of his Note to HSBC Bank.  (Compl. ¶¶ 26-27, 29-30.)  Under New

10   York law, without a **valid** delivery of the asset in question to the trust, there are no

11   rights conferred in the trustee under the common law.  Thus, if the trust fails to acquire

12   property, then there is no trust over that property that may be enforced.

13        Additionally, **where the method of transfer is set forth in the Trust**

14   **instrument, it is not subject to any variance or exception**.  NY Est. Powers & Trust §

15   7-2.4 ("If the trust is expressed in the instrument creating the estate of the trustee, every

16   sale, conveyance or other act of the trustee in contravention of the trust, except as

17   authorized by this article and by any other provision of law, is void.").

18        Congress has recognized the importance of strict compliance with trust

19   agreements and New York Trust Law.  Specifically, the bipartisan Congressional

20   Oversight Panel observed, "New York trust law requires strict compliance with the trust

21   documents; any transaction by the trust that is in contravention of the trust documents is

22   void, meaning that the transfer cannot actually take place as a matter of law.  Therefore,

23   if the transfer for the notes and mortgages did not comply with the PSA, the transfer

---

[1] As early as 1935, in *Burgoyne v. James*, 282 N.Y.S. 18,21 (1935), the New York
Supreme Court recognized that business trusts, also known as "Massachusetts trusts,"
are deemed to be common law trusts. *See also In re Estate of Plotkin*, 290 N.Y.S. 2d 46,
49 (N.Y. Sur. 1968) (characterizing common stock trust funds as "common Law
trust[s]").  Other jurisdictions are in accord. *See, e.g., Mayfield v. First Nat'l Bank of
Chattanooga*, 137 F. 2d 1013 (6th Cir. 1943) (applying common law trust principles to a
pool of mortgage participation certificate holders).

1    would be void, and the assets would not have been transferred to the trust."  Congr.

2    Oversight Panel, <u>Oversight Report Examining the Consequences of Mortgage</u>

3    <u>Irregularities for Financial Stability and Foreclosure Mitigation</u>, at 19 (Nov. 16, 2010),

4    *available at* http://cop.senate.gov/reports/library/report-111610-cop.cfm (internal

5    footnote omitted) (hereinafter "Congressional Oversight Panel Report").

 **2.   The Underlying Reasons For the Technical Requirements of the**
 **PSA**

8          The highly technical requirements of the PSA are relevant and cannot simply be

9    ignored as prayed by Defendant, for the following reasons:  The Ellington Trust is not a

10   lender, bank or servicer; rather, it is a special purpose vehicle established as a Trust

11   under New York law.  The Trust was created for the purpose of issuing securities to be

12   sold to investors and using the proceeds to buy mortgage notes.  Since the securities

13   were to be repaid by mortgage payments on the notes, the securities came to be known

14   as "mortgage backed securities."  The PSA specifies two purposes for the Trust:  (1) to

15   establish that the transfers of the mortgage notes are true sales that become bankruptcy

16   remote, and (2) to meet the requirements of a Real Estate Mortgage Investment Conduit,

17   or "REMIC" pursuant to the U.S. Internal Revenue Code.

18         Securitization is the practice of pooling and selling contractual debt obligations

19   ("receivables") such as residential mortgages, commercial mortgages, auto loans or

20   credit card debt, to a specially-created entity, typically a trust.  The Ellington Trust is a

21   New York Corporate Trust formed to act as a Real Estate Mortgage Investment

22   Conduits, or "REMICs," pursuant to the U.S. Internal Revenue Code.  REMICs are

23   treated as pass-through vehicles for tax purposes and enjoy tax-free exemptions and

24   bankruptcy remote protection.  The first benefit of a REMIC entity serves to ensure

25   favorable tax treatment of the bank, the securitization trust, and the investors, ideally

26   through the securitization trust having "pass-thru" tax status, meaning that the

27   securitization trust is not taxed on its own income when it is paid on the receivables.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE
COMPLAINT

The second is ensuring that the trust's assets are "bankruptcy remote," meaning that they are insulated from the claims of the bank's creditors. This involves ensuring that the transfer of the receivables to the trust is a "true sale" and not a financing transaction.

While compliance with the PSA may be inconvenient and complex, certain benefits were conferred on Defendants and the investors of the Ellington Trust. Plaintiff does not seek to challenge those REMIC benefits or claim a right to them. Rather, Plaintiff simply seeks a declaration of the legally observable consequences of Defendants' own choices.

### 3. Plaintiff Sufficiently Alleges the Assignment is Fabricated

Plaintiff contends that the First Assignment was executed and notarized after the Closing Date of the Ellington Trust. (Compl. ¶ 30, 42.) The Assignment's failure to comply with the PSA is a sufficient basis for pleading its fabrication. *See Vogan v. Wells Fargo et al.*, No. 11-cv-2098-JAM-KJN, 2011 WL 5826016, at *7 (N.D. Cal. Nov. 11, 2011) ("Plaintiffs alleged that the recorded assignment was executed well after the closing date of the [trust] to which it was allegedly sold, giving rise to a plausible inference that at least some part of the recorded assignment was fabricated.").

### B. Plaintiff has Standing to Assert that HSBC Bank and Bank of America Are Not His Creditors

Defendant's contention that Plaintiff lacks standing to challenge or sue under the PSA is a misnomer. Specifically, Plaintiff does not challenge the validity of securitization or sue for breach of contract under the PSA. Rather, Plaintiff brings this suit to protect his own interest in the Property. Defendants' failure to follow the PSA has an observable legal effect. *See* NY Est. Powers & Trust § 7-2.4. As Defendants lack standing under the Deed of Trust to demand payments or foreclose on the Property, Plaintiff sues to establish the parties' respective rights and obligations under such Deed of Trust and to enjoin Defendants from taking action against his home. *See Tamburri v. Suntrust Mortgage, Inc.*, No. C-11-899 EMC, 2011 WL 6294472, at *12, 14 (N.D. Cal.

Dec. 15, 2011) (finding prejudice where foreclosing entity initiated foreclosure prior to acquiring beneficial interest in deed of trust) ("Thus, assuming prejudice is required, the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to the homeowner."). Defendants' noncompliance with the PSA's terms and requirements merely demonstrates one specific factual basis for asserting invalidity of the purported transfer of Plaintiff's Loan to the Ellington Trust.

Contrary to Defendant's assertions regarding standing, "standing" to sue is a jurisdictional limitation. The doctrine of standing is comprised both of constitutional or "Article III" requirements and of "prudential considerations." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607 (1979).

### 1.  **Plaintiff Meets the Article III Requirements**

In order to establish "a case or controversy" within the meaning of Article III, Plaintiff must show the following: 1) injury in fact; 2) causation; and 3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992).

The "injury in fact" requirement is met upon a showing that plaintiff is threatened with impairment of his own interests. *See Gladstone Realtors*, 441 U.S. at 100. Here, Defendants claim a right to collect payments from Plaintiff and a stake in the Property, which is his own home. Thus, there can be no doubt that Plaintiff has alleged sufficient facts to meet the requisite "injury in fact" element. *See Aetna Life Ins. Co. of Harford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 462-464 (1937) (cases involving a substantial controversy between parties having adverse interests of sufficient immediacy and reality are justiciable as a case and controversy under Article III).

In addition to an "injury in fact," there must be a causal connection between the injury and the conduct complained of. *Lujan*, 504 U.S. at 559-560. Here, Defendants seek to assert their purported rights under the Deed of Trust, including the power to collect payments with the threat of invoking the non-judicial foreclosure statute and taking Plaintiff's home. Plaintiff's claimed injury – imminent foreclosure of the

-13-

Property – is directly caused by Defendants' conduct.  Thus, Plaintiff sufficiently alleges the required causal connection between the injury and Defendants' conduct.

Finally, there must be a substantial likelihood that the relief sought, if granted, will redress the injury. *Lujan*, 504 U.S. at 559-560.   Here, Plaintiff seeks an adjudication of the parties' respective rights to the Property and under Plaintiff's Loan. To the extent that Defendants are deemed to have no legal rights in connection with Plaintiff's Loan, Plaintiff also seeks to enjoin Defendants from demanding payment, reporting derogatory information to the credit bureaus and foreclosing on his home. Thus, the declaratory and injunctive relief sought here will redress Plaintiff's injury and prevent the imminent loss of his home.

## 2.  **Plaintiff Meets the Prudential Considerations**

In addition to the immutable requirements of Article III, federal courts have adopted a set of prudential principles that preclude the exercise of jurisdiction over some types of cases in which Article III standing exists:  1) Plaintiff's claim must fall within the "zone of interests" sought to be protected or regulated by the statute or constitutional guarantee in question; 2) the claim must be for injury to Plaintiff's own legal rights and interests, rather than the legal rights or interest of third parties; and 3) the injury must be individualized or confined to a discrete group. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-475, 102 S. Ct. 752, 759-760 (1984).  The gist of the question of standing is whether Plaintiff has alleged such a "personal stake in the outcome" as to assure that "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illuminations of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82, S.Ct. 691, 703 (1962).

Here, Plaintiff does not seek to challenge or assert the rights of the trustee or the investors to the securitized trust.  The only relevance that the Ellington Trust and the PSA have to Plaintiff's claim is that there must be a determination of whether or not the

-14-

Ellington Trust, pursuant to the PSA, has standing to assert to be Plaintiff's creditor.
Again, Plaintiff seeks to protect his own rights to his home.  Thus, Title 28 U.S.C.
Section 2201, the Declaratory Judgment Act, provides protection for the precise zone of
interest in which Plaintiff's claim falls.  In addition, the injury claim is on behalf of a
discrete individual here – Plaintiff – and no other.

For these reasons, Plaintiff has standing to sue Defendants.  Plaintiff does not
claim any benefits to or seek any adjudication of the investors' claims regarding the
failed securitization.  Rather, Plaintiff's claims are limited to his own interests –
protection of his property rights.

## C.    Plaintiff's Challenge to HSBC Bank's Authority is Proper

Courts have recognized a borrower's right to bring claims challenging a party's
interest under a deed of trust.  *See Vogan*, 2011 WL 5826016, *7; *Schafer v.
CitiMortgage, Inc.*, No. CV 11-03919 ODW, 2011 WL 2437267, *4 (C.D. Cal. June 15,
2011); *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658
AHM, 2011 WL 2533029, at *5 (C.D. Cal. June 24, 2011) ("It is true, as Defendants
repeatedly assert, that California Civil Code § 2924, et seq. authorizes non-judicial
foreclosures in this state.  It is not the case, however, that the availability of a
nonjudicial foreclosure process somehow exempts lenders, trustees, beneficiaries,
servicers, and the numerous other (sometimes ephemeral) entities involved in dealing
with Plaintiffs from following the law." ).  Indeed, one of the very purposes of
California's nonjudicial foreclosure statutes is "to protect the debtor/trustor from
wrongful loss of the property." *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th
256, 270 (2011) (internal quotations omitted).  Bank of America cannot hide behind the
nonjudicial statutory framework when it does not meet its most basic requirements.[2]

---

[2] A recent audit commissioned by the San Francisco Office of the Assessor-Recorder
reviewed 382 foreclosures from 2009 to 2011 and found that 84% contained at least one
clear violation of California's foreclosure laws.  The audit is available on the Assessor-
Recorder's website at http://sfassessor.org.

Lenders have seized on the recent ruling in *Gomes v. Countrywide*, 192 Cal. App. 4th 1149 (2011), by straining the interpretation of its holding to mean that a homeowner cannot challenge a foreclosure or his purported creditor's right to enforce the deed of trust—under any circumstances. *Gomes* held that California Civil Code § 2924(a)(1) does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized." *Id.* at *1155. But the issue in *Gomes* was not whether the wrong entity had initiated foreclosure; rather, the issue was whether the company selling the property in the nonjudicial foreclosure sale (MERS) was authorized to do so by the owner of the promissory note. *See id.* at 1155 (rejecting the argument that a plaintiff may test whether the agent initiating the foreclosure has the authority to do so; "[t]he recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures"). That is, *Gomes* involved a challenge to whether an ***agent*** had the authorization of its principal, who was the undisputed beneficiary under the deed of trust, to initiate foreclosure. It was not, as here, a challenge to the ***principal***'s claimed status as beneficiary under the deed of trust.

Notably, the *Gomes* court distinguished a case cited by the plaintiff precisely because, in that case, "the plaintiff alleged wrongful foreclosure on the ground that assignments of the deed of trust had been improperly backdated, and thus the wrong party had initiated the foreclosure process. No such infirmity is alleged here." *Id.* Thus, *Gomes* explicitly avoided the scenario pled here, in which "the plaintiff's complaint identified a specific factual basis for alleging that the foreclosure was not initiated by the correct party." *Id.* at 1156. *Gomes* is therefore inapposite.[3]

---

[3] Defendant's reliance on *Gomes* and California's non-judicial foreclosure statutory framework is also undermined by Defendant's claim that "the Property is not currently in foreclosure." (Motion, p. 5.)

PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE COMPLAINT

**D.** **Plaintiff Is Not Required to Tender**

Tender is not required when the action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Lona v. Citibank, N.A.*, 2011 WL 6391584, *14-16 (Cal. App. 6 Dist. Dec. 21, 2011) (identifying four exceptions to the tender rule); *Sacchi,* No. CV 11-1658 AHM, 2011 WL 2533029, at *9-10 (*citing Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997)); *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957); *see also Vogan*, No. 2:11-CV-02098-JAM-KJN, 2011 WL 5826016, *7-8 ("The Court holds that the tender requirement does not apply to this case because Plaintiffs are challenging the beneficial interest held by U.S. Bank in the deed of trust, not the procedural sufficiency of the foreclosure itself."); *Foulkrod v. Wells Fargo Financial California Inc.*, No. CV 11-732-GHK (AJWx) (C.D. Cal. May 31, 2011) ("…requiring plaintiff to tender the amount due on his loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan."). In recognizing the existence of exceptions to the tender rule, the *Sacchi* court articulated the inherent unfairness in requiring a homeowner challenging the underlying debt to tender the full amount due:

> Defendants present this "tender" argument as though it were absolute and without exception. Such a rule, if it existed, would in many instances eliminate any possibility of challenging wrongful foreclosures. Most homeowners, even those who are not in default, do not have ready access to the funds necessary to pay off the balance of their mortgages. Thus, if a home is about to be taken away through error or malfeasance, a homeowner would be unable to hold onto his most precious possession. This would be a grossly inequitable result and would permit entities to foreclose on properties with impunity.

PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE COMPLAINT

1    *Sacchi*, 2011 WL 2533029, at *9.  Here, Plaintiff alleges just such malfeasance.[4]

2    (Compl. ¶¶ 16-30.)

3         The court in *Vogan*, recognizing that requiring tender would be inappropriate in

4    just such a case as this, explained, "Plaintiffs are not saying that U.S. Bank failed to

5    follow the letter of California's statutory foreclosure law; they are claiming that U.S.

6    Bank did not have standing to foreclose in the first place.  Thus, relying on *Onofrio*,

7    requiring Plaintiffs to tender the full amount of the indebtedness to an entity, U.S. Bank,

8    that is allegedly not the beneficiary to the deed of trust in order to protect Plaintiffs'

9    interest in the Property would be inequitable." *Vogan*, 2011 WL 5826016, at *7 (*citing*

10   *Onofrio*, 55 Cal. App. 4th 413).  Plaintiff is therefore not required to tender.

11        **E.    Plaintiff Has Alleged an Actual Controversy Among the Parties**

12             **Sufficient to Maintain a Cause of Action for Declaratory Relief**

13        The foundation of Plaintiff's Complaint is a request that the Court determine the

14   rights and obligations of the parties relative to the Property.  Section 2201(a) of Title 28

15   of the United States Code expressly permits a party to bring a cause of action for

16   Declaratory Relief:  "In a case of actual controversy within its jurisdiction, ... any court

17   of the United States, upon the filing of an appropriate pleading, may declare the rights

18   and other legal relations of any interested party seeking such declaration, whether or not

19   further relief is or could be sought."

20        As to a controversy to invoke declaratory relief, the question is whether there is a

21   "substantial controversy, between parties having adverse legal rights, of sufficient

22   immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland*

23   *Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941).  The United States Supreme

24   Court further explained:

25

26   _____

27   [4] Tender is also not required where a borrower has claims against the beneficiary that
     would offset the amount due. *Lona*, 2011 WL 6391584, at *14.  Plaintiff's Complaint

28   pleads numerous violations of state and federal law.

A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot…The controversy must be definite and concrete, <u>touching the legal relations of parties having adverse legal interests</u>…It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240-241, 57 S.Ct. 461, 464 (1937) (citations omitted).

Here, Plaintiff has alleged an actual case and controversy in connection with Defendants' actions that are present, ongoing and undoubtedly will continue in the immediate future.  Bank of America asserts that Plaintiff's claim is "merely academic or hypothetical" because it rescinded the Notice of Default.  (Motion, p. 5.)  This only highlights the need for declaratory relief: Defendant has previously asserted a right to foreclose and still claims an interest in Property.  *See Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases brought by any interested party involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so.")  Defendants still claim an interest in the Property and continue to seek collection of Plaintiff's mortgage payments.  Thus, Defendants wrongs are both past and future, and it is the future behavior in particular from which Plaintiff seeks relief with her claim for declaratory relief.

## F.    <u>Plaintiff Has Sufficiently Alleged a Cause of Action for Negligence</u>

Defendant owes Plaintiff a duty of care because of their unconventional relationship with Plaintiff.  (Compl. ¶¶ 57-58.)  Traditionally, a lender loaned money to a borrower and serviced the loan.  Here, Defendants' role is not "conventional" because

HSBC Bank is a bank acting as trustee for a trust and not the original lender who loaned or serviced Plaintiff's Loan.  The relationship between Defendants and Plaintiff is not indicative of a "conventional" lender-borrower relationship because HSBC Bank is not receiving the benefits of Plaintiff's Note and Mortgage.  Instead, Defendants hold Plaintiff's payments for the benefit of the certificate holders.  In addition, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care.  *Das v. PHH, N.A.,* 186 Cal. App. 4th 727, at 741 (2010) *citing Chazen v. Centennial Bank,* 61 Cal. App. 4th 532, 537 (1998).   Additionally, "[a] lender may owe a duty of care sounding in negligence to a borrower when the lender's activities exceed those of a conventional lender...."  *Osei v. Countrywide Home Loans*, 692 F.Supp.2d 1240, 1249 (2010).  One such instance is when the lender goes, "...beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning [a] trial period plan."  *Ansanelli v. JP Morgan Chase Bank, N.A.,* 2011 WL 1134451, at *7 (N.D. Cal. March 28, 2011).

In the instant case, Plaintiff's factual allegations demonstrate Defendant's participation in Plaintiff's loan modification efforts beginning in 2009.  (Compl. ¶ 66-82.)  After accepting numerous trial modification payments, Defendant refused to honor or acknowledge the modification.  *Id.*  Accordingly, by way of his Complaint, Plaintiff has alleged that Defendant went beyond its role as a conventional, silent loan servicer.  "This is precisely beyond the domain of a usual money lender."  *See Anaselli*, 2011 WL 1134451, at *7 (internal quotations omitted).

### G.   **Plaintiff Has Sufficiently Plead a Quasi-Contract Claim**

Plaintiff has specifically alleged Defendant was unjustly enriched to Plaintiff's detriment by accepting and retaining Plaintiff's payments without acquiring an interest in Plaintiff's Note and Deed of Trust.  (Compl. ¶ 115.)  California courts agree that if a plaintiff alleges that a defendant was unjustly enriched to his detriment he is allowed to seek restitution under a Quasi Contract claim.  "[I]t is clear that California courts

consistently permit a party to seek restitution under a variety of theories, including quasi-contract and constructive trust." *See McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006); *Louiseau v. VISA USA Inc.*, WL 4542896 (S.D. Cal. 2010). "Under the law of restitution, "[a]n individual is required to make restitution if he or she is unjustly enriched at the expense of another. [Citations.] A person is enriched if the person receives a benefit at another's expense. [Citation.]" *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (*citing First Nationwide Savings v. Perry* (1992) 11 Cal.App.4th 1657, 1662).

Defendant was unjustly enriched at Plaintiff's expense by accepting payments that it had no authority to collect. The elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1592 (*citing Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). Plaintiff alleges that he was not paying his true creditor because there was no valid assignment that allowed the Defendants to collect on the debt obligation. As such, the Defendants collected mortgage payments that they were not entitled to at the expense of Plaintiff. Therefore, under the unjust enrichment theory, Plaintiff has pleaded sufficient facts that Defendants are required to make restitution as a result of collecting his mortgage payments when they had no authority to do so.

Defendant's arguments in this regard fail. Defendant argues that a claim for quasi contract cannot lie where there is an express contract. (Motion, p. 8.) But this ignores Plaintiff's allegations that the Defendants never acquired an interest in the Note or Deed of Trust and thus are not party to any contract with Plaintiff. Further, Defendant's tender arguments fail for the reasons discussed above in Part IV.D.

**H.**    <u>**Plaintiff Made a Proper Qualified Written Request under RESPA**</u>

Section 2605 "is written in the disjunctive: a QWR may include a statement of the reason, *to the extent applicable*, for the borrower's belief that the account is in error *or*

provide sufficient detail to the servicer regarding *other information sought*." *Luciw v. Bank of America, N.A.*, 2010 WL 3958715, *3 (N.D. Cal. 2010); *In re Chalgren*, No. 09-56729/Adv. Proc. No. 10-5057 (N.D. Cal., October 7, 2011) ("This Court agrees with United States District Judge Fogel's reading of 12 U.S.C. § 2605(e)(1)(b) found in [*Luciw*], which holds that a letter can be a Qualified Written Request even if the letter does not state that the account is in error."). Plaintiff's QWR provided sufficient information for Bank of America to identify Plaintiff's Loan. (Compl., ¶ 122, Ex. C.)

In interpreting the proper scope of a RESPA claim, the Seventh Circuit has recently held:

> "RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable,* that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond. See 12 U.S.C. § 2605(e)(1)(A), (e)(2).

*Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011).

The QWR contained a statement of the reasons for Plaintiff's belief that the account is in error, including fraudulent accounting tricks that may have increased the

principal balance and improperly applied payments toward principal and interest. (Compl., Ex. C.)  The QWR also sought information related to the Loan, including the identity and contact holder of the entity receiving Plaintiff's mortgage payments, accumulated late fees and charges, and a "complete life of loan transactional history." (Compl ¶ 122, Ex. C.)  Defendant complains that some of the information is outside the scope of a QWR, but even if that is so "it is not clear that a written request cannot be a QWR simply because only some of the information sought is beyond the scope of the statute." *Luciw*, 2010 WL 3958715, at *3.

Defendant argue that Plaintiff fails to plead actual damages sufficient for a claim under RESPA.  However, "courts have interpreted this requirement [to plead pecuniary loss] liberally." *Yulaeva v. WAMU Mortg. Funding, Inc.*, No. 09-cv-1504, 2009 WL 2880393, *15 (E.D. Cal. 2009); *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F.Supp.2d 1156, 1164 (M.D. Ala. 1999) (recognizing costs incurred in preparing correspondence and traveling to post office as actual damages under RESPA) ("The court finds that both the statutory language of other sections of RESPA and RESPA's legislative history demonstrate that Congress intended RESPA to be a remedial consumer-protection statute.").  At this stage of the proceedings, Plaintiff has alleged damages and seeks attorney's fees. Plaintiff should be permitted to proceed on his RESPA claim.

Finally, Defendant makes the throwaway argument Bank of America "later followed up with a complete response."  (Motion, p. 9.)  However, Defendant does not point to any such response and is merely seeking to challenge factual assertions in the Complaint.  This is insufficient under the applicable standard of review.

## I.   **Bank of America is a "Debt Collector" Under the Fair Debt Collection Practices Act ("FDCPA")**

Defendant Bank of America has violated the FDCPA in attempting to collect Plaintiff's debt. Plaintiff has alleged that Defendant's debt collection activities violated

FDCPA because Defendant illegally attempted to collect on Plaintiff's debt obligation when it had no authority to do so.  (Compl. ¶¶ 73-77.)

Defendant argues that it is not a "debt collector" as defined under the FDCPA. The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  As Bank of America concedes, a mortgage servicer like Bank of America can be a debt collector under the FDCPA if the debt is in default at the time the debt obligation is acquired. *See* 15 U.S.C. 1692A(6)(F)(iii).  A Notice of Default was filed on May 21, 2008.  (Defendant's Request for Judicial Notice ("RFJN"), docket entry #12-2, Ex. 2.).  Bank of America purportedly obtained servicing rights sometime after September 2009.  (Compl. ¶ 67.)  Bank of America is therefore a debt collector under the FDCPA.[5]

Defendant argues that non-judicial foreclosure is not a debt collection activity within the FDCPA.  Plaintiff does not allege that the foreclosure of his property constitutes as the FDCP violation.  Instead, Plaintiff specifically alleges that Defendant Bank of America, attempted to collect a debt by demanding payments, attempting to collect payments and threatening to take action if payments were not made.  (Compl. ¶¶ 84, 129.)

## J. __Plaintiff Has Sufficiently Alleged a Claim Under California Business and Professions Code Section 17200__

The Unfair Competition Law (UCL) is codified in California Business and Professions Code section 17200.  The UCL prohibits any unlawful, unfair, or fraudulent business practice.  The UCL is written in the disjunctive, which means a business act or

---

[5] Defendant's own correspondence to Plaintiff states, "BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector." (Compl., Ex. D.)

1    practice can be alleged to be all or any of the three prongs.  *Berryman v. Merit Property*

2    *Management, Inc.,* 152 Cal.App. 4th 1544, 1554 (2007).

3         Here, Plaintiff alleges Defendant Bank of America has engaged in practices that

4    are: (1) unfair, (2) likely to deceive, and (3) unlawful.  (Compl. ¶¶ 131-135.)  Defendant

5    has collected Plaintiff's payments with no right to do so.  Furthermore, Plaintiff has

6    sufficiently stated facts constituting unlawful business practices.  Mr. Johnson has

7    alleged that Bank of America engaged in an unlawful business practices by violating

8    RESPA, FDCPA, and TILA.  Defendant's aforementioned conduct is unlawful and thus

9    satisfies the "unlawful" prong of Cal. Bus. and Prof. Code section 17200.

10        Also, it is against public policy and substantially injurious to consumers to engage

11   in an unfair debt collection practices as Bank of America did here.  "[T]he Supreme

12   Court has not yet enunciated a legal test for unfairness in consumer actions under the

13   unfair competition law.  The courts of appeal have variously suggested that a practice is

14   unfair if it offends an established public policy or is 'immoral, unethical, oppressive,

15   unscrupulous or substantially injurious to consumers,' and that unfairness is determined

16   by weighing the utility of the practice against the gravity of the harm to the consumer."

17   *Kunert v. Mission Financial Services Corp.*, 1 Cal.Rptr.3d 589, 607 (2003).  The harm

18   to Plaintiff and consumers in general greatly outweighs Defendant's unfair actions.

19        Bank of America also engaged in "fraudulent" business practices.  To state a

20   claim for a fraudulent business practice under section 17200, Plaintiff needs only

21   demonstrate that "members of the public are likely to be deceived."  *Bank of the West v.*

22   *Sup. Ct.*, 2 Cal.4th 1254, 1267 (1992) *citing* to *Chern v. Bank of America*, 15 Cal.3d

23   866, 876 (1976).  Bank of America's business pattern, collecting on a debt it has no

24   right to, is extremely likely to deceive both Plaintiff and the public.

25   **K.    Plaintiff Has Sufficiently Alleged an Accounting Claim**

26        A "fiduciary relationship between the parties is not required to state a cause of

27   action for accounting.  All that is required is that some relationship exists that requires

28

1  an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009). The

2  elements for a claim for accounting are: (1) fiduciary relationship or other

3  circumstances appropriate to the remedy; and (2) a balance due from the defendant to

4  the plaintiff that can only be ascertained by an accounting. *See* Witkin, California

5  Procedure, Pleadings, section 776, p. 233 (4th ed.).

6      Defendants have held themselves out to be Plaintiff's creditors when in fact, as

7  discussed above, they have no right to collect any payments from Plaintiff. Because

8  Defendants have been enriched from this misrepresented relationship, a balance is due to

9  Plaintiff for payments received by Bank of America and HSBC Bank. Plaintiff does not

10  know and could not know without an accounting, the balance due from Defendants

11  because of the structure of the misrepresented relationship. Generally, a homeowner

12  makes mortgage payments to the mortgage servicer. From there, the servicer retains a

13  portion of the payment as a servicing fee and distributes the proceeds to the beneficiary.

14  Because the beneficiary can change without notice to the homeowner, the homeowner is

15  thus left in the dark as to whom each mortgage payment is distributed. An accounting is

16  therefore needed.

17      **L.**    **Plaintiff's Prayer for Punitive Damages Should Not be Stricken**

18      When ruling upon a motion to strike, the court must view the pleading under

19  attack in the light more favorable to the pleader. *Lazar v. Trans Union LLC*, 195 FRD

20  665, 669 (C.D. CA 2000); *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d

21  1200, 1207 (S.D. CA 2007). Further, the grounds for a motion to strike must appear on

22  the face of the pleading under attack, or from matters which the court may judicially

23  notice. *SEC v. Sands*, 902 F.Supp. 1149, 1165 (C.D. CA 1995). Since pleadings

24  ordinarily are not admissible as evidence at trial, the time and expense of a motion to

25  strike generally outweighs any potential benefits to be gained from such a motion.

26      While punitive damages must be plead with specific factual allegations

27  [*Brousseau v. Jarrett*, 73 Cal.App. 3d 864, 872 (1977)], the Complaint must be read as a

28

PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE
COMPLAINT

1   whole so that even conclusory allegations may suffice when read in context with facts

2   alleged as to the defendant's wrongful conduct.  *Perkins v. Sup.Ct. (General Tel.*

3   *Directory Co.)*, 117 Cal. App. 3d 1 (1981), 6–7; *Clauson v. Sup.Ct. (Pedus Services,*

4   *Inc.)*, 67 Cal App. 4th 1253, 1255 (1998).  Furthermore, the general requirement

5   regarding the pleading of fraud with specificity is relaxed when the specifics of the fraud

6   are within the knowledge and province of the defendant.  *Comm. on Children's*

7   *Television v. General Foods Corp.*, 35 Cal. 3d 197, 217 (1983) ("Less specificity is

8   required when it appears from the nature of the allegations that the defendant must

9   necessarily possess full information concerning the facts of the controversy.");

10  *Qualimane Co. v. Stewart Title Guaranty Co.*, 19 Cal.4th 26, 47 (1998).

11        Here, Plaintiff's Complaint contains fact specific allegations showing that

12  Defendant's wrongfully sought to foreclose on his home and continue to demand

13  payments without having an enforceable secured interest in his Loan.  Defendants have

14  resorted to relying on forged and/or fabricated foreclosure documents.  There can be no

15  question that read as a whole, the Complaint adequately demonstrates that Defendants'

16  conduct was oppressive and malicious.  As such, Plaintiff's prayer for punitive damages

17  should not be stricken.

18        **M.    Plaintiff is Entitled to Attorneys Fees Under RESPA**

19        Defendant argues that Plaintiff has not alleged any statutory basis for attorneys

20  fees.  This is not so.  Plaintiff's RESPA claim entitles him to recover "the costs of the

21  action, together with any attorneys fees incurred in connection with such action as the

22  court may determine to be reasonable under the circumstances."  12 U.S.C. § 2605(f)(3).

23  The Court should not strike Plaintiff's prayer for attorney's fees.

24        **N.    The Lis Pendens Should Not Be Expunged**

25        For the reasons discussed above, this Court should deny Defendant's Motion to

26  Dismiss.  But even if the Court grants Bank of America's Motion to Dismiss, Plaintiff's

27  claims against non-moving Defendant HSBC Bank remain.  These claims affect real

28

PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE
COMPLAINT

property.  The lis pendens should remain.

## V.  <u>CONCLUSION</u>

Plaintiff's Complaint is well-pled and allows the Court to infer more than the mere possibility that Mr. Johnson are entitled to relief; in fact, when the Court accepts the factual allegations as true the Court can make a "reasonable inference" that Defendant has engaged in misconduct for which they may be liable.  Although Defendant does allege "factual" disputes in their Motion, this is not sufficient to support this motion to dismiss.  Therefore, Plaintiff respectfully requests that the Court DENY Defendant's Motion in its entirety.  To the extent the Court dismisses any claim or allegation, Plaintiff requests the opportunity to amend his pleading to cure any deficiency, add additional causes of action or rename any causes of action.

Dated:      February 17, 2012           **PROSPER LAW GROUP, LLP**

By:   /s/ Deborah P. Gutierrez
      Gordon F. Dickson
      Deborah P. Gutierrez
      Michael E. Thompson
      Attorneys for Plaintiff,
      Gregory Johnson

PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE COMPLAINT

**PROOF OF SERVICE**

**Gregory Johnson vs HSBC Bank USA, National Association, et al.**
**United States District Court – Southern District of California Case No. 3:11-cv-2091-JM-WVG**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 6100 Center Drive, Suite 1050, Los Angeles, California 90045. On February 17, 2012, I served the following document(s) by the method indicated below:

**PLAINTIFF'S OPPOSITION TO DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS THE COMPLAINT**

[ ]   by transmitting via facsimile on this date from fax number (866) 409-9475 the documents listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. The transmission report, which is attached to this proof of service, was properly issued by the transmitting fax machine. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal.R.Ct 2003(3).

[X]   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date on postage meter date is more than one day after the date of deposit in this Declaration.

[ ]   by placing the documents(s) listed above in sealed envelope(s) and by causing personal delivery of the envelope(s) to the person(s) at the address(es) set forth below. A signed proof of service by the process server or delivery service will be filed shortly.

[ ]   by placing the document(s) listed above in a sealed envelope(s) and consigning it to an express mail service for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below. A copy of the consignment slip is attached to this proof of service.

**(See Attached Service List)**

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed on February 17, 2012, at Los Angeles, California.

Shawnee A. Ellington

1

## Service List

2

Gregory Johnson vs HSBC Bank USA, National Association, et al.
United States District Court – Southern District of California Case No. 3:11-cv-2091-JM-WVG

3

4

5

6

Authorized Agent for Defendant HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR THE ELLINGTON TRUST SERIES 2007-1
c/o C T Corporation System
818 W. Seventh St.
Los Angeles, California 90017

7

8

9

Attorneys for Defendant BANK OF AMERICA, N.A.
Stuart W. Price, Esq.
Sean D. Muntz, Esq.
Christina G. Rothschild, Esq.
Bryan Cave LLP
3161 Michelson Drive, Suite 1500
Irvine, California 92612

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28