UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY JOHNSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR THE ELLINGTON TRUST SERIES 2007-1; BANK OF AMERICA, N.A.; and Does 1 – 10, inclusive,<br><br>Defendants. | Case No. 3:11-cv-2091-JM-WVG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Docket No. 12 |

On September 12, 2011, Plaintiff Gregory Johnson brought a complaint against HSBC Bank USA, National Association as Trustee for the Ellington Trust Series 2007-1 ("HSBC") and Bank of America, N.A. ("BOA"). BOA has filed a motion to dismiss ("MTD" or "motion"). Plaintiff filed an opposition on February 17, 2012. HSBC originally failed to answer the complaint, but jointly moved with Plaintiff to set aside default. The court granted that motion, and HSBC now joins BOA's motion to dismiss with no further argument. Neither Defendant has filed a reply brief. For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

In December of 2006, Plaintiff obtained a loan from Fremont Investment & Loan ("Fremont") in order to purchase property located in Oceanside, California. Compl. ¶ 24. The Deed of Trust named Mortgage Electronic Registration Systems ("MERS") as the nominee and beneficiary of the Deed of Trust. ¶ 24. The complaint alleges that Fremont "attempted to securitize and sell [the] loan to another entity or entities" that were "*not* HSBC Bank or the Ellington Trust." ¶ 25. Consequently, HSBC "is merely a third-party stranger to the loan transaction." ¶ 26. Plaintiff alleges that despite his requests, BOA (apparently his mortgage servicer), has failed to verify the debt and amount owed.[1] ¶ 26.

Specifically, Plaintiff alleges that the document purporting to assign the Deed of Trust from MERS to HSBC (Compl. Ex. A), dated May 29, 2008, was fraudulent, in part because the assignment was executed after the closing date of the trust, which violates the Pooling and Servicing Agreement ("PSA").[2] ¶ 28-29. Plaintiff also alleges that Treva Moreland, "the purported signatory of the purported 'Assignment', was not the 'Assistant Secretary' for MERS and lacked the requisite corporate and legal authority to effect an actual 'assignment' of Plaintiff's Note and Mortgage." ¶ 38. The complaint states that Treva Moreland signs thousands of property record documents without any authority, and thus any amount Plaintiff owes is subject to equitable offset by damages owed by Defendants.

The complaint further alleges that in October of 2010, HSBC "caused a document purporting to be a Substitution of Trustee ('Substitution') to be recorded with the County of San Diego." ¶ 57. The substitution purported to substitute Quality Loan Service Corporation

---

[1] While Plaintiff does not dispute that he owes money on the loan, he disputes the amount owed and "seeks the Court's assistance in determining who the holder in due course is of his Note and Deed of Trust." ¶ 22.

[2] Plaintiff admits he is not a party to or beneficiary of the PSA, but claims that the failure to securitize his note should prevent HSBC and BOA from claiming any interest in the mortgage.

1  ("Quality") as trustee, but Plaintiff claims that no such transfer ever occurred. ¶ 57. The
2  complaint states that under California law, the lender must be the party to appoint the successor
3  trustee, and HSBC was not the lender.
4      In the summer of 2009, Plaintiff sought a loan modification from Wilshire, the original
5  servicer of Plaintiff's loan. ¶ 66. At some point the loan "was sold or transferred to BOA." ¶
6  67. Plaintiff made nine payments under the modified plan, but BOA refused to honor the new
7  plan. ¶ 68. After much confusion, Plaintiff obtained a loan modification from BOA to be
8  effective February 1, 2011. ¶ 79. In March of 2011, Plaintiff sent a Qualified Written Request
9  letter to verify the debt owed, but BOA did not provide a substantive response. ¶ 83.
10      Plaintiff also alleges that Defendants have not properly credited payments he has made
11  on the mortgage and have incorrectly calculated interest. ¶ 85. He claims that Defendants knew
12  at all times that Plaintiff was paying incorrect amounts. ¶ 86. As a result of their actions,
13  Plaintiff's credit has been damaged and his home has been made unmarketable because "the title
14  to Plaintiff's home has been slandered [and] clouded." ¶ 89. Finally, the complaint states that
15  "Plaintiff has offered to and is ready, willing, and able to unconditionally tender his obligation."
16  ¶ 96.
17      Based on these factual allegations, the complaint seeks relief under seven causes of
18  action, each applied to both Defendants: (1) declaratory relief under 28 U.S.C. §§ 2201-2202;
19  (2) negligence; (3) quasi-contract; (4) violation of 12 U.S.C. § 2605; (5) violation of 15 U.S.C. §
20  1692; (6) violation of Cal. Bus. & Prof. Code § 17200 et seq.; (7) accounting.

21  **II. LEGAL STANDARD AND DISCUSSION**
22      A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of the
23  pleadings. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating the motion, the
24  court must construe the pleadings in the light most favorable to the non-moving party, accepting
25  as true all material allegations in the complaint and any reasonable inferences drawn therefrom.

1  See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).  The Supreme Court has held
2  that in order to survive a 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to
3  relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The
4  court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or
5  facts sufficient to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d
6  696, 699 (9th Cir. 1990).

7  **A. Viability of Attack on Loan Securitization**

8  1. Ability to Challenge Loan Securitization

9  The threshold issue of whether Plaintiff can make any claim related to the loan's
10  securitization affects the viability of many of the individual claims discussed below.  BOA cites
11  Rodenhurst v. Bank of America, 773 F.Supp.2d 886, 899 (D. Haw. 2011) for its statement that
12  "[t]he overwhelming authority does not support a cause of action based upon improper
13  securitization."  However, the discussion cited in that case centers on plaintiffs who claim that
14  securitization itself violates the agreement between the mortgagor and mortgagee.  Here, Plaintiff
15  does not dispute the right to securitize the mortgage, but alleges that as a result of improper
16  procedures, the true owner of his mortgage is unclear.  As a result, he has allegedly been paying
17  improper entities an excess amount.

18  Ninth Circuit district courts have come to different conclusions when analyzing a
19  plaintiff's right to challenge the securitization process as Plaintiff has here.  See Schafer v.
20  CitiMortgage, Inc., 2011 WL 2437267 (C.D. Cal. 2011) (denying defendants' motion to dismiss
21  declaratory relief claim, which was based on alleged improper transfer due to alleged fraud in
22  signing of documents); Vogan v. Wells Fargo Bank, N.A., 2011 WL 5826016 (E.D. Cal. 2011)
23  (allowing § 17200 claim when plaintiffs alleged that assignment was executed after the closing
24  date of securities pool, "giving rise to a plausible inference that at least some part of the recorded
25  assignment was fabricated").  But see  Armeni v. America's Wholesale Lender, 2012 WL

603242 (C.D. Cal. 2012) (dismissing declaratory relief, quasi-contract, UCL, and accounting claims because "plaintiff lack[ed] standing to challenge the process by which his mortgage was (or was not) securitized because he is not a party to the PSA"); Junger v. Bank of America, N.A., 2012 WL 603262 at *3 (C.D.Cal. 2012).

Here, the court finds that Plaintiff is not categorically excluded from making claims based on allegations surrounding the loan's securitization.[3]  As in Vogan, and unlike Armeni, Plaintiff here alleges both violations of the PSA and relevant law.  BOA has not sufficiently demonstrated that violations of law associated with the loan's securitization can go unchecked because Plaintiff is not a party to the PSA.

Other cases cited by BOA on this issue are irrelevant or inapplicable here.

2. Sufficiency of Allegations of Improper Assignment

BOA also argues that Plaintiff makes no showing that the assignment was improper.  It claims that Treva Moreland was authorized to assign the Deed of Trust, and there was no violation of the statute, asserting that "[n]owhere in [the complaint] does [Plaintiff] allege facts showing the Assignment was defective, invalid, or somehow voidable." MTD at 4.  However, the complaint states that MERS had no knowledge of the assignment, that Treva Moreland was never appointed to "assistant secretary" by the MERS board of directors, and thus there was no authority to make the assignment.

While BOA cites no case law on this point, Plaintiff provides persuasive authority to demonstrate that courts have accepted allegations such as his.  In Kingman Holdings, LLC v. CitiMortgage, Inc., 2011 WL 1883829 (E.D. Tex. 2011), the court assessed a fraud claim against CitiMortgage in which the plaintiff alleged that MERS' appointment of an assistant secretary ("Blackstun," who later made the assignment) was invalid because it was not approved by the

---

[3]  BOA has failed to apply its argument concerning the loan's securitization to any of Plaintiff's specific claims, and the court declines to perform this task.

board of directors. The court upheld the fraud claim under the 9(b) standard, finding that Plaintiff's allegations were plausible and that if Blackstun had no authority to bind MERS, then MERS filed a fraudulent document after he executed the assignment.

Similarly, in Vogan, the court denied defendants' motion to dismiss a § 17200 claim because, as here, the plaintiff pleaded that Wells Fargo recorded a fabricated assignment of the loan because the assignment was executed after the closing date of the mortgage-backed security pool, "giving rise to a plausible inference" of fabrication. Id. at *7. Here, in addition to attacking Treva Moreland's authority, Plaintiff has alleged that the assignment was made after the closing date of the trust, as required by Section 2.1 of the PSA.

**B. Tender Requirement**

BOA also argues that a plaintiff "must tender the entire unpaid balance of the loan to maintain an action challenging foreclosure." MTD at 4. However, as BOA separately points out, Plaintiff is not currently in foreclosure—BOA rescinded its Notice of Default in March of 2011. BOA fails to acknowledge this fact in its argument, merely citing cases supporting the existence of the tender rule in actions for wrongful foreclosure.

Even if the fact of foreclosure were at issue, BOA has not sufficiently demonstrated that the tender rule should apply here. Plaintiff is not challenging Defendants' compliance with the foreclosure law, but is claiming that defendants did not properly receive the assignment of their loan. The "tender requirement does not apply to this case because" Plaintiff challenges "the beneficial interest held by [Defendants] in the deed of trust, not the procedural sufficiency of the foreclosure itself." Vogan at *8.

**C. Declaratory Relief**

BOA seeks dismissal of the declaratory relief claim because the issues "will be resolved by the other claims for relief." MTD at 5. It also argues that the California foreclosure statute

does not recognize a judicial action to determine whether a party foreclosing is authorized to do so.

The Ninth Circuit has explained that while there is no bar to declaratory relief if legal remedies exist, a court's discretion should lead it to refuse to grant declaratory relief unless it would clarify the parties' interests or relieve the uncertainty giving rise to the proceeding. U.S. v. Washington, 759 F.2d 1353, 1356-57 (9th Cir. 1985). The Schafer court upheld a declaratory relief claim in a similar action to this one, noting that there was a controversy over whether the assignment of a deed of trust was fraudulent, and the cause of action was not duplicative. 2011 WL 2437267 at *4.

While it is possible that declaratory relief will be unnecessary, it would be premature to dismiss the cause of action at this point. BOA has failed to show how resolution of each of the other claims will necessarily provide all of the requested relief if they are granted. Further, it remains possible that some or all of Plaintiff's other claims will not survive to trial—if that occurs, declaratory judgment could serve to clarify the parties' interests.

**D.  Negligence**

The complaint alleges that HSBC and BOA were negligent because they demanded mortgage payments when they did not have the right to enforce that obligation. This allegedly caused Johnson to overpay in interest, among other things. As a result of the "reckless negligence, utter carelessness, and blatant fraud of the Defendants," Plaintiff's chain of title has been "rendered unmarketable and fatally defective." Compl. ¶ 110.

Defendants' motion to dismiss argues that they had no duty of care here, because Plaintiff "does not plead facts supporting a finding that Defendant's conduct exceeded the scope of its conventional role as a lender."[4] MTD at 6. Plaintiff states that his relationship with BOA is not

---

[4]   BOA also denies the existence of proximately-caused damages, but does not directly address the alleged damages from derogatory credit reports and excessive interest charges.

conventional because the loan has been securitized, so "Defendants hold Plaintiff's payments for the benefit of the certificate holders." Pl. Opp. at 20. Further, Plaintiff argues that a lender that offers a loan modification has gone beyond its conventional role.

The rule that a lender does not have a duty to a borrower is only a "general rule," and only applies to situations where a lender plays its conventional role. E.g., Taheny v. Wells Fargo Bank, N.A., 2010 WL 5394315 (E.D. Cal. 2010). Accepting the allegations of the complaint as true, BOA has gone beyond the typical lender's role. As in Ansanelli v. JP Morgan Chase Bank, N.A., 2011 WL 1134451 at *7 (N.D. Cal. 2011), BOA established a loan modification plan with Plaintiff, made excessive interest charges and made "derogatory credit reports to credit bureaus." Compl. ¶ 109. More generally, Plaintiff alleges that BOA did not have the legal authority to demand payments from Plaintiff because of the assignment's invalidity. If BOA was not a lender legally authorized to collect payments from Plaintiff, the general rule shielding actual lenders from liability would not apply.

More generally, the court finds that the allegations Plaintiff has put forth meet the federal pleading standard under Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). While yet to be proven, Plaintiff presents plausible allegations of misconduct that, if true, would entitle him to relief.

**E. Quasi-Contract**

Based upon the same factual allegations, Plaintiff seeks to recover on a quasi-contract cause of action. BOA maintains that in California a quasi-contract claim is the same as a claim for unjust enrichment, and such an action does not lie if an express agreement governs the parties' rights. Further, BOA argues that the rule of tender applies under Cal. Civ. Code § 1691(b), which governs rescission of a contract.

BOA is correct that a plaintiff may not recover on a quasi-contract action if an express agreement exists. E.g., Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., 94 Cal. App. 4th

151, 172 (2001).  However, as Plaintiff points out, the complaint alleges that there is no valid agreement governing the transaction between Plaintiff and BOA.  Thus, if Plaintiff succeeds in showing that BOA was not authorized to collect payment, he may be able to recover based on quasi-contract.  For the same reason, BOA's § 1691 argument fails—it does not state why the tender rule should apply if no contract exists.

**F.  Violation of 12 U.S.C. § 2605 – The Real Estate Settlement Procedures Act**

The complaint alleges that Plaintiff sent a Qualified Written Request ("QWR") to BOA in March of 2011 asking for information to verify the validity of the debt at issue.   However, BOA failed to provide the legally-required information, only providing a partial history of the account.

BOA's motion to dismiss states that instead of including information about why the account was in error, the QWR "includes a list of document demands which appear to be entirely irrelevant to a valid QWR under RESPA."  MTD at 9.  Further, BOA maintains that Plaintiff's damage claims are not sufficiently specific.

1. Whether Plaintiff Failed to Submit a Proper QWR

Generally, Ninth Circuit courts have held that a QWR must relate to the servicing of a loan, rather than its creation or modification.  Gates v. Wachovia Mortg. FSB, 2011 WL 2602511 at *3 (E.D. Cal. 2010).  Further, the "borrower's inquiry must include a statement of the reasons for the belief of the borrower . . . that the account is in error or provide sufficient detail to the servicer regarding other information sought by the borrower."  Id; 12 U.S.C. § 2605(e).

BOA has not argued that the QWR was unrelated to servicing of the loan, but states that Plaintiff did not provide "a statement or supporting documentation of his reasons for believing the account was in error."  MTD at 9.  While Plaintiff may not have stated the reasons he believed the account was in error, Defendant provides no argument on why it believes that the QWR failed to "provide sufficient detail to the servicer regarding other information sought by

the borrower," merely arguing that the list of document demands "appear to be entirely irrelevant to a valid QWR under RESPA." MTD at 9. While some courts have found QWRs inadequate because they related to the creation or modification of a loan, the QWR here requested information that related to "making the payments of principal and interest with respect to the amounts received from the borrower." 12 U.S.C. § 2605. For example, the QWR requested collection notes concerning the loan, as well as the name and contact information of the entity to which BOA was purportedly making the payments received from Plaintiff. While all of the information requested by Plaintiff may not have been validly sought under the statute, the QWR provided sufficient information concerning several requests for information that should have garnered a response by BOA. See Tamburri v. Suntrust Mortg., Inc., 2011 WL 6294472 at *7 (N.D. Cal. 2011) (noting that QWR requesting documentation supporting collection and enforcement efforts, including documents in support of enforcement of promissory note and deed of trust and a list of assignments "arguably request[ed] information as to how the servicer has handled [plaintiff's] account").

While BOA states that it provided a complete response following its initial letter confirming receipt and promising to provide a response, it has not detailed or produced the alleged response.

2. Whether Plaintiff Adequately Pled Damages

Plaintiff may recover for actual damages suffered under 12 U.S.C. § 2605(f)(1)(a). BOA asserts that Plaintiff has failed to plead damages adequately. Generally the requirement for damages has been interpreted liberally. Yulaeva v. Greenpoint Mortg. Funding, Inc., 2009 WL 2880393 at *15 (E.D. Cal. 2009). While Plaintiff does not provide substantial factual support, the allegations are sufficient to state a claim at the pleading stage—Plaintiff has specifically alleged that he sought certain information, BOA denied him his statutorily required information,

1  and the failure to receive that information caused him to pay more than was necessary on his
2  loan and to incur costs in repairing his credit.
3  **G. Violation of 15 U.S.C. § 1692 – Fair Debt Collection Practices Act**
4      The complaint states that BOA violated the FDCPA through making various false
5  representations in its attempt to collect on the loan.  The MTD asserts that the FDCPA's
6  definition of a "debt collector" does not include a mortgage servicer or an assignee of the debt,
7  "where the 'debt was not in default at the time it was obtained by [a servicing company].'" MTD
8  at 10 (citing 15 U.S.C. §1692a(6)(F)).  Further, it argues that a foreclosure on a property based
9  on a deed of trust does not constitute collection of a debt within the meaning of the FDCPA.
10      Plaintiff agrees that the statute's definition of "debt collector" does not include an entity
11  attempting to collect a debt that was not in default when the debt was obtained by that entity.
12  However, he has alleged that BOA took over servicing the debt sometime after September 2009,
13  Compl. ¶ 67, and the debt went into default in May 2008.  According to BOA, the default notice
14  was not rescinded until 2011.  BOA does not address this issue in its MTD.
15      BOA also argues that "foreclosure on a property based on a deed of trust does not
16  constitute collection of a debt within the meaning of the FDCPA," citing Hulse v. Ocwen Federal
17  Bank, FSB, 195 F.Supp.2d 1188, 1204 (D. Or. 2002).  In that case, the judge decided that
18  "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money . . . .
19  Payment of funds is not the object of the foreclosure action." Id.  First, many courts have
20  registered disagreement with this decision. See, e.g., Albers v. Nationstar Mortg., LLC 2011 WL
21  43584 (E.D. Wash. 2011) (noting that Hulse's reasoning has been rejected by the Fourth and
22  Fifth circuits and limited in other circumstances).
23      Second, as Plaintiff points out, he does not allege that foreclosure of the property
24  constituted the violation; instead, he believes the demands of payment and threats were unlawful.
25  Hulse held that "any actions taken by [defendant] in pursuit of the actual foreclosure may not be

11

challenged as FDCPA violations," but "plaintiffs may maintain any FDCPA claims based on alleged actions by [defendant] in collecting a debt." Hulse at 1204.  Based on this, even if the court were to accept Hulse's reasoning, the FDCPA claim survives.

**H. Violation of Cal. Bus. & Prof. Code § 17200**

Plaintiff alleges that BOA has engaged in unfair, unlawful, and fraudulent business practices by executing misleading documents, executing documents without proper authority to do so, and demanding payments for non-existent debt, among other things.

BOA concedes that violation of another law serves as a predicate for stating a cause of action under § 17200, but states that "Plaintiff must plead facts to support the underlying statutory violation." MTD at 11.  Because the court has upheld Plaintiff's other claims, the § 17200 claim must be upheld under the unlawful prong.  See, e.g., Vogan v. Wells Fargo Bank, N.A., 2011 WL 5826016 at *6-7 (upholding § 17200 claim because court had also upheld claim under Truth in Lending Act, 15 U.S.C. §1641(g)).

**I. Accounting**

Plaintiff also requests an accounting for all payments made.  BOA states that a request for accounting must be tied to another actionable claim, and Plaintiff has no viable claims.  BOA also states that Plaintiff has not alleged he is owed a balance.

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." Tamburri v. Suntrust Mortg., Inc., 2011 WL 6294472 at *17 (N.D. Cal. 2011) (quoting Teselle v. McLoughlin, 173 Cal.App.4th 156, 179 (2009) (also noting that the purpose of requesting an accounting is "to discover what, if any, sums are owed to the plaintiff" and that "an accounting may be used as a discovery device")).

Further, "[a] request for a legal accounting must be tethered to relevant actionable claims." Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Washington

Mutual, Inc., 2010 WL 3769459 (N.D. Cal. 2010). While the complaint does not specifically "tether" the request for accounting to another single cause of action, it is clearly based on the same set of circumstances that is the basis for most of the causes of action in this case—the collection of money that was not actually due to Defendants.

Because Plaintiff has pleaded viable claims that are related to the same facts under which he requests an accounting, the court declines to dismiss the accounting claim at this time.

**J. Motion to Strike Request for Punitive Damages and Fees**

Defendant has made a motion to strike the request for punitive damages, arguing the "complaint is patently insufficient to support" such a claim. Fed. R. Civ. P. 12(f) allows a court to strike an insufficient defense or "any redundant, immaterial, impertinent, or scandalous matter." BOA cites to Bureerong v. Uvawas, 922 F.Supp.1450 (C.D. Cal. 1996), which holds that a motion to strike may be used when damages are not recoverable as a matter of law. However, a more recent Ninth Circuit case, Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970 (9th Cir. 2010), held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." Id. at 974-75. Thus, without any argument that the claim for punitive damages is redundant, immaterial, impertinent, or scandalous, BOA's motion cannot succeed.

BOA also asks the court to strike the request for attorney's fees, claiming there is no contractual or statutory basis for the award. However, as Plaintiff points out, RESPA allows for attorney's fees. 12 U.S.C. §2605(f)(3) (providing that costs may be recovered "together with any attorneys [sic] fees incurred in connection with such action").

### III. CONCLUSION

For the reasons stated above, the motion to dismiss is DENIED. Defendants' motion has failed to demonstrate that Plaintiff's claims were implausible or precluded as a matter of law.

**IT IS SO ORDERED.**

**Dated:** March 19, 2012

_____
Jeffrey T. Miller
United States District Judge